## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

WAYNE ADAM WALDO                         Case No.  09-30969
LISA MARIE WALDO

              Debtors

SCOTT DELANEY JOHNSON                     Case No.  09-30974
MARY MARGARET JOHNSON

              Debtors

JUDITH MIKULEN                           Case No.  09-30988

              Debtor

CLAYTON GADSON COOLEY                     Case No.  09-30990

              Debtor

CRYSTAL MICHELLE JONES                    Case No.  09-30991

              Debtor

WILLIAM RAY JOINES, II                    Case No.  08-35781

              Debtor

WILLIAM EDGAR SCHARFF, JR.                Case No.  08-35658
MICHELLE ANGELIQUE SCHARFF

              Debtors

## MEMORANDUM ON MOTIONS TO REQUIRE
## DISGORGEMENT OF FEES AND TO COMPEL AMENDMENT
## TO BANKRUPTCY RULE 2016(b) ATTORNEY COMPENSATION
## DISCLOSURE STATEMENTS AND SCHEDULE F, AND
## MOTION FOR SANCTIONS FOR VIOLATIONS
## OF 11 U.S.C. § 362(a)(6) AND § 524(a)(2)

**APPEARANCES:**   RICHARD F. CLIPPARD, ESQ.
UNITED STATES TRUSTEE
  Patricia C. Foster, Esq.
  800 Market Street
  Suite 114
  Knoxville, Tennessee  37902
  Attorneys for United States Trustee

CLARK & WASHINGTON, P.C.
  Steven F. Crawford, Esq.
  5401 Kingston Pike
  Building III, Suite 610
  Knoxville, Tennessee  37919
  Richard H. Thomson, Esq.
  3300 Northeast Expressway
  Building 3
  Atlanta, Georgia  30341
  Respondents

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

Before the court are seven contested matters initiated by a motion filed by the United States Trustee in each of these Chapter 7 cases. Because the motions raise identical issues regarding the conduct of the Debtors' attorneys, they were consolidated for trial pursuant to the Agreed Pretrial Order entered by the court on May 19, 2009, as amended on June 26, 2009. Each motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O) (2006).

Facts and documents essential to the resolution of all issues are contained in the Joint Stipulations filed by the parties in each case on July 16, 2009, as amended by the Amended Joint Stipulations filed in case numbers 09-30974 and 08-35658 on July 20, 2009. The Brief of the United States Trustee in Support of Motion to Require Disgorgement of Fees was filed by the United States Trustee (U.S. Trustee) in each case on July 20, 2009, and the Brief For Respondents filed by the law firm of Clark & Washington, P.C., (Clark & Washington) and Steven F. Crawford, Esquire (Mr. Crawford) was filed in each case on July 20, 2009.[1]

**I**

The undisputed facts and issues raised by the United States Trustee in each of these bankruptcy cases are discussed in detail below:

---

[1] A pretrial conference was held on April 30, 2009, and a trial was scheduled for July 27, 2009; however, pursuant to the Joint Stipulations and Amended Joint Stipulations filed in each case, the parties stipulated that an evidentiary hearing was not necessary. The court will accordingly resolve the issues on the stipulated record and the parties' briefs.

### Wayne Adam Waldo and Lisa Marie Waldo

On February 5, 2009, the Debtors in case number 09-30969, Wayne Adam Waldo and Lisa Marie Waldo (collectively, Waldos), retained Clark & Washington and Mr. Crawford, the managing attorney of its Knoxville office, to represent them in the filing of their Chapter 7 bankruptcy case. WALDO STIPS. at ¶¶ 1, 14.  In association with this representation, the Waldos executed a Chapter 7 Attorney-Client Agreement For Routine Cases Under 11 U.S.C. Chapter 7 (Waldo Engagement Contract) on February 5, 2009, outlining their duties, as well as those of Mr. Crawford and Clark & Washington, whereby they agreed, *inter alia*, to pay Mr. Crawford and Clark & Washington a flat fee in the amount of $1,250.00 for legal services related to the filing of their bankruptcy case, to be performed both pre-petition and post-petition, plus the $299.00 filing fee.  WALDO STIPS. at ¶ 6; WALDO STIP. EX. D.   Additionally, the Waldo Engagement Contract contains the following Acknowledgment executed by the Waldos:

> I further acknowledge and agree that this retainer contract contemplates payment for services rendered pre-Petition as well as services to be rendered post-Petition.  The initial payment represents fees earned pre-Petition and the future payments are to be applied as contemporaneous compensation for post-Petition services.

WALDO STIP. EX. D. The Waldos were not informed by Clark & Washington and/or Mr. Crawford that, to the extent not paid prior to the filing of their petition, their attorneys' fees were dischargeable.  WALDO STIPS. at ¶ 13.

As payment of the $1,250.00 attorney fee, and as is routine for Clark & Washington and Mr. Crawford for collecting payment of flat fees for Chapter 7 bankruptcy cases, the Waldos provided Clark & Washington and Mr. Crawford with five $250.00 post-dated checks on February 17, 2009,

drawn on their checking account with First Tennessee Bank:  (a) check #1073, dated March 13, 2009, was deposited into the Clark & Washington bank account on March 18, 2009; (b) check #1074, dated April 24, 2009, was deposited into the Clark & Washington bank account on May 7, 2009; (c) check #1075, dated May 22, 2009, was deposited into the Clark & Washington bank account on May 27, 2009; (d) check #1076, dated June 19, 2009, was deposited into the Clark & Washington bank account on June 19, 2009; and (e) check #1077, dated July 17, 2009, was not deposited into the Clark & Washington bank account.  WALDO STIPS. at ¶¶ 2, 9-10; WALDO STIP. Ex. A.  None of these five post-dated checks were returned unpaid due to insufficient funds.  WALDO STIPS. at ¶ 4.

The Waldos filed the Voluntary Petition commencing their Chapter 7 bankruptcy case on February 26, 2009, and received their discharge on October 1, 2009.  WALDO STIPS. at ¶ 3.[2]  Also filed with their Voluntary Petition was the Disclosure of Compensation of Attorney for Debtor(s) signed by Mr. Crawford (Waldo Compensation Disclosure), certifying that he had agreed to accept $1,250.00 from the Waldos and that he had received the entire $1,250.00 prior to the filing of the Waldo Compensation Disclosure.  WALDO STIPS. at ¶ 7; WALDO STIP. Ex. C.  In addition, Mr. Crawford makes the following certification in the Waldo Compensation Disclosure:

> 6.  In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
>
>> Negotiations with secured creditors to reduce to market value; exemption planning; preparation and filing of reaffirmation agreements and applications as needed; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A) for avoidance of liens on household goods.

---

[2] Paragraph 5 of the Joint Stipulations states that the Waldos had not yet received a discharge.  The discharge was, however, granted subsequent to the filing of the Joint Stipulations.

7.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:

> Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding.

WALDO STIP. EX. C.  The parties stipulated that the Waldo Compensation Disclosure filed on February 26, 2009, did not accurately reflect the Waldos' contractual fee agreement with Clark & Washington and Mr. Crawford.  WALDO STIPS. at ¶ 7.

On April 6, 2009, the United States Trustee filed a Motion to Require Disgorgement of Fees and to Compel Amendment to FRBC 2016(b) and Schedule F and Notice of Hearing (Waldo Disgorgement Motion), seeking an order requiring Mr. Crawford and Clark & Washington to amend the Waldo Compensation Disclosure to accurately reflect the fee arrangement with the Debtors, to amend Schedule F to list himself and Clark & Washington as creditors for unpaid pre-petition legal fees, and for an order requiring Mr. Crawford and Clark & Washington to disgorge all fees collected through the post-petition cashing of the post-dated checks as well as all attorneys' fees paid pre-petition.

Mr. Crawford filed a Response to Motion to Require Disgorgement of Fees and to Compel Amendment to FRBC 2016(b) and Schedule F and Notice of Hearing (Response to Waldo Disgorgement Motion) on April 22, 2009, acknowledging that the Waldo Compensation Disclosure did not reference the post-dated checks but arguing that the firm interpreted the receipt of all post-dated checks as payment in full, that neither he nor Clark & Washington was a pre-petition creditor of the Debtors, and that disgorgement should not be allowed because their fees were

6

reasonable and encompassed both pre-petition and post-petition services.  Additionally, Mr.

Crawford filed a Disclosure of Compensation of Attorney for Debtor(s) - Amended (Amended

Waldo Compensation Disclosure) on April 8, 2009, now certifying that the Debtors had agreed to

pay $1,250.00 for legal services but that "none" had been paid and that the entire $1,250.00, to be

paid from their earnings, was still due, "[t]o be paid at $250 per month on 3/13/09, 4/24/09, 5/22/09,

6/19/09, and 7/17/09." WALDO STIP. EX. B.  With respect to the legal services included within the

fee, Mr. Crawford certifies the following in the Amended Waldo Compensation Disclosure:

> 6.  In return for the above-disclosed fee, I have agreed to render legal service for all
> aspects of the bankruptcy case, including:
>
>> Analysis of the debtor's financial situation and rendering advice to the debtor
>> in determining whether to file a bankruptcy petition;
>>
>> Preparation and filing of any petition, schedules, statement of affairs;
>>
>> Representation of the debtor at the 341 meeting of creditors and any
>> adjourned hearings thereof.
>
> 7.  By agreement with the debtor(s), the above-disclosed fee does not include the
> following service:
>
>> Any contested matters in this Chapter 7 case, including Adversary
>> Proceedings, Objections to Exemptions, or any objections to Discharge and
>> Dischargeability.  These will be charged additional attorney fees at the rate
>> of $ 295 per hour.
>>
>> Reaffirmation agreements $ 50; Redemptions $ 350; Amendments $ 104;
>>
>> As necessary: Judicial lien avoidances $ 150; Defense of misc. motions/
>> Relief from Stay Actions $ 245 per hour; Excess Creditors $ 50; Misc. letters
>> $ 50; E-mail/faxes/creditors $ 15; Reopen closed case $ 100; Closed records
>> .25 pp

WALDO STIP. EX. B.  The parties stipulated that the Amended Waldo Compensation Disclosure

accurately reflects the Waldos' contract with Clark & Washington and Mr. Crawford, and that the

7

$1,250.00 fee was "a flat fee for legal services related to the filing of chapter 7 bankruptcies, which is defined as a fee for all services, both pre- and post-filing, related to the bankruptcy case, except for post-petition services specifically listed[.]" WALDO STIPS. at ¶¶ 6, 8.

### Scott Delaney Johnson and Mary Margaret Johnson

On February 14, 2009, the Debtors in case number 09-30974, Scott Delaney Johnson and Mary Margaret Johnson (collectively, Johnsons), retained Clark & Washington and Mr. Crawford, the managing attorney of its Knoxville office, to represent them in the filing of their Chapter 7 bankruptcy case. JOHNSON STIPS. at ¶¶ 1, 16. In association with this representation, the Johnsons executed a Chapter 7 Attorney-Client Agreement For Routine Cases Under 11 U.S.C. Chapter 7 (Johnson Engagement Contract) on February 14, 2009, outlining their duties, as well as those of Mr. Crawford and Clark & Washington, whereby they agreed, *inter alia*, to pay Mr. Crawford and Clark & Washington a flat fee in the amount of $1,250.00 for legal services related to the filing of their bankruptcy case, to be performed both pre-petition and post-petition, plus the $299.00 filing fee. JOHNSON STIPS. at ¶ 6; JOHNSON STIP. EX. D. Additionally, the Johnson Engagement Contract contains the following Acknowledgment executed by the Johnsons:

> I further acknowledge and agree that this retainer contract contemplates payment for services rendered pre-Petition as well as services to be rendered post-Petition. The initial payment represents fees earned pre-Petition and the future payments are to be applied as contemporaneous compensation for post-Petition services.

JOHNSON STIP. EX. D. The Johnsons were not informed by Clark & Washington and/or Mr. Crawford that, to the extent not paid prior to the filing of their petition, their attorneys' fees were dischargeable. JOHNSON STIPS. at ¶ 15.

8

As payment of the $1,250.00 attorney fee, and as is routine for Clark & Washington and Mr. Crawford for collecting payment of flat fees for Chapter 7 bankruptcy cases, the Johnsons provided Clark & Washington and Mr. Crawford with six post-dated checks on February 21, 2009, drawn on their checking account at American Trust: (a) check #629, dated March 21, 2009, in the amount of $200.00, was deposited into the Clark & Washington bank account on March 25, 2009; (b) check #630, dated April 21, 2009, in the amount of $200.00, was deposited into the Clark & Washington bank account on May 7, 2009, and returned due to insufficient funds on May 21, 2009; (c) check #631, dated May 21, 2009, in the amount of $200.00, was not deposited into the Clark & Washington bank account; (d) check #632, dated June 21, 2009, in the amount of $200.00, was not deposited into the Clark & Washington bank account; (e) check #633, dated July 21, 2009, in the amount of $200.00, was not deposited into the Clark & Washington bank account; and (f) check #635, dated August 21, 2009, in the amount of $249.00, was not deposited into the Clark & Washington bank account. JOHNSON STIPS. at ¶¶ 2, 4, 9-10; JOHNSON STIP. EX. A.[3]  Additionally, the parties stipulated that Clark & Washington and Mr. Crawford often delay in depositing the post-dated checks upon request of debtors and that the Johnsons expressly requested a delay, but one of their checks was unintentionally deposited. JOHNSON STIPS. at ¶¶ 11-13; JOHNSON STIP. EX. E. Clark & Washington paid all charges associated with the Johnsons' NSF check. JOHNSON STIPS. at ¶ 13.

---

[3] The Amended Joint Stipulations erroneously state that five post-dated checks were delivered to Mr. Crawford by the Debtors; however, the remainder of paragraph 2 and Stipulated Exhibit A clearly evidence that six checks were tendered.  Additionally, there is nothing in the record to explain why the actual payment arrangement, wherein the Debtors delivered six post-dated checks totaling $1,200.00 rather than the five post-dated checks totaling $1,250.00 outlined in the Johnson Engagement Contract, differed.

The Johnsons filed the Voluntary Petition commencing their Chapter 7 bankruptcy case on February 26, 2009, and received their discharge on July 2, 2009. JOHNSON STIPS. at ¶ 3.[4]  Also filed contemporaneously with their Voluntary Petition was the Disclosure of Compensation of Attorney for Debtor(s) signed by Mr. Crawford (Johnson Compensation Disclosure), certifying that he had agreed to accept $1,250.00 from the Johnsons and that he had received the full $1,250.00 prior to the filing of the Johnson Compensation Disclosure. JOHNSON STIPS. at ¶ 7; JOHNSON STIP. Ex. C. In addition, the Johnson Compensation Disclosure states the following:

> 6.  In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
>
>> Negotiations with secured creditors to reduce to market value; exemption planning; preparation and filing of reaffirmation agreements and applications as needed; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A) for avoidance of liens on household goods.
>
> 7.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:
>
>> Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding.

JOHNSON STIP. Ex. C.  The parties stipulated that the Johnson Compensation Disclosure filed on February 26, 2009, did not accurately reflect the Johnsons' contractual fee agreement with Clark & Washington and Mr. Crawford. JOHNSON STIPS. at ¶ 7.

On April 6, 2009, the United States Trustee filed a Motion to Require Disgorgement of Fees and to Compel Amendment to FRBC 2016(b) and Schedule F and Notice of Hearing (Johnson Disgorgement Motion), seeking an order requiring Mr. Crawford and Clark & Washington to amend

---

[4] The Amended Joint Stipulations filed on July 20, 2009, erroneously state, at paragraph 5, that the Debtors' discharge had not been entered.

the Johnson Compensation Disclosure to accurately reflect the fee arrangement with the Johnsons, to amend Schedule F to list himself and Clark & Washington as creditors for unpaid pre-petition legal fees, and that Mr. Crawford and Clark & Washington be required to disgorge all fees collected through the post-petition cashing of the post-dated checks as well as all attorneys' fees paid pre-petition.

Mr. Crawford filed a Response to Motion to Require Disgorgement of Fees and to Compel Amendment to FRBC 2016(b) and Schedule F and Notice of Hearing (Response to Johnson Disgorgement Motion) on April 22, 2009, acknowledging that the Johnson Compensation Disclosure did not reference the post-dated checks but arguing that the firm interpreted the receipt of all post-dated checks as payment in full, that neither he nor Clark & Washington was a pre-petition creditor of the Johnsons, and that disgorgement should not be allowed because their fees were reasonable and encompassed both pre-petition and post-petition services.   Additionally, Mr. Crawford filed identical Disclosure of Compensation of Attorney for Debtor(s) - Amended (Amended Johnson Compensation Disclosure) on April 9 and 10, 2009, now certifying that the Johnsons had agreed to pay $1,050.00 for legal services, that $1.00 had been paid, and that the balance of $1,049.00, to be paid from their earnings, was still due, "[t]o be paid at $200 per month on 3/21/09, 4/21/09, 5/21/09, 6/21/09, 7/21/09, and at $249 on 8/21/09." Johnson Stip. Ex. B. With respect to the legal services included within the fee, Mr. Crawford certifies the following in the Amended Johnson Compensation Disclosure:

> 6.  In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

Analysis of the debtor's financial situation and rendering advice to the debtor in determining whether to file a bankruptcy petition;

Preparation and filing of any petition, schedules, statement of affairs;

Representation of the debtor at the 341 meeting of creditors and any adjourned hearings thereof.

7. By agreement with the debtor(s), the above-disclosed fee does not include the following service:

Any contested matters in this Chapter 7 case, including Adversary Proceedings, Objections to Exemptions, or any objections to Discharge and Dischargeability. These will be charged additional attorney fees at the rate of $ 295 per hour.

Reaffirmation agreements $ 50; Redemptions $ 350; Amendments $ 104;

As necessary: Judicial lien avoidances $ 150; Defense of misc. motions/Relief from Stay Actions $ 245 per hour; Excess Creditors $ 50; Misc. letters $ 50; E-mail/faxes/creditors $ 15; Reopen closed case $ 100; Closed records .25 pp

JOHNSON STIP. EX. B. The parties stipulated that the Amended Johnson Compensation Disclosure accurately reflects the Johnsons' contract with Clark & Washington and Mr. Crawford, and that the $1,250.00 fee was "a flat fee for legal services related to the filing of chapter 7 bankruptcies, which is defined as a fee for all services, both pre- and post-filing, related to the bankruptcy case, except for post-petition services specifically listed[.]" JOHNSON STIPS. at ¶¶ 6, 8.

### Judith Mikulen

On February 18, 2009, the Debtor in case number 09-30988, Judith Mikulen, retained Clark & Washington and Mr. Crawford, the managing attorney of its Knoxville office, to represent her in the filing of her Chapter 7 bankruptcy case. MIKULEN STIPS. at ¶¶ 1, 16. In association with this

representation, Ms. Mikulen executed a Chapter 7 Attorney-Client Agreement For Routine Cases

Under 11 U.S.C. Chapter 7 (Mikulen Engagement Contract) on February 18, 2009, outlining her

duties, as well as those of Mr. Crawford and Clark & Washington, whereby she agreed, *inter alia*,

to pay Mr. Crawford and Clark & Washington a flat fee in the amount of $1,000.00 for legal services

related to the filing of her bankruptcy case, to be performed both pre-petition and post-petition, plus

the $299.00 filing fee. MIKULEN STIPS. at ¶ 6; MIKULEN STIP. EX. D. Additionally, the Mikulen

Engagement Contract contains the following Acknowledgment executed by Ms. Mikulen:

> I further acknowledge and agree that this retainer contract contemplates payment for
> services rendered pre-Petition as well as services to be rendered post-Petition. The
> initial payment represents fees earned pre-Petition and the future payments are to be
> applied as contemporaneous compensation for post-Petition services.

MIKULEN STIP. EX. D. Ms. Mikulen was not informed by Clark & Washington and/or Mr. Crawford

that, to the extent not paid prior to the filing of her petition, their attorneys' fees were dischargeable.

MIKULEN STIPS. at ¶ 15.

    As payment of the $1,000.00 attorney fee, and as is routine for Clark & Washington and Mr.

Crawford for collecting payment of flat fees for Chapter 7 bankruptcy cases, Ms. Mikulen provided

Clark & Washington and Mr. Crawford with five $200.00 post-dated checks on February 26, 2009,

drawn on her checking account at Home Federal Bank:  (a) check #344, dated March 27, 2009, was

deposited into the Clark & Washington bank account on May 7, 2009; (b) check #345, dated

April 24, 2009, was deposited into the Clark & Washington bank account on May 7, 2009, and

returned due to insufficient funds on May 20, 2009; (c) check #346, dated May 29, 2009, which was

not deposited into the Clark & Washington bank account; (d) check #347, dated June 26, 2009,

which was not deposited into the Clark & Washington bank account; and (e) check #348, dated

July 31, 2009, which was not deposited into the Clark & Washington bank account.  MIKULEN STIPS.

at ¶¶ 2, 4, 9-10; MIKULEN STIP. EX. A.  Additionally, the parties stipulated that Clark & Washington

and Mr. Crawford often delay in depositing the post-dated checks upon request of debtors and that

Ms. Mikulen expressly requested a delay, but one of her checks was unintentionally deposited, which

resulted in the return of the check for insufficient funds.  MIKULEN STIPS. at ¶¶ 11-13; MIKULEN

STIP. EX. E.  Clark & Washington paid all charges associated with Ms. Mikulen's NSF check.

MIKULEN STIPS. at ¶ 13.

Ms. Mikulen filed the Voluntary Petition commencing her Chapter 7 bankruptcy case on

February 26, 2009, and received a discharge on June 30, 2009.  MIKULEN STIPS. at ¶¶ 3, 5.  Also

filed with her Voluntary Petition was the Disclosure of Compensation of Attorney for Debtor(s)

signed by Mr. Crawford (Mikulen Compensation Disclosure), certifying that he had agreed to accept

$1,000.00 from Ms. Mikulen and that he had received the full $1,000.00 prior to the filing of the

Mikulen Compensation Disclosure.  MIKULEN STIPS. at ¶ 7; MIKULEN STIP. EX. C.  In addition, the

Mikulen Compensation Disclosure states the following:

> 6.  In return for the above-disclosed fee, I have agreed to render legal service for all
> aspects of the bankruptcy case, including:
>
> > Negotiations with secured creditors to reduce to market value; exemption
> > planning; preparation and filing of reaffirmation agreements and applications
> > as needed; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A)
> > for avoidance of liens on household goods.
>
> 7.  By agreement with the debtor(s), the above-disclosed fee does not include the
> following service:
>
> > Representation of the debtors in any dischargeability actions, judicial lien
> > avoidances, relief from stay actions or any other adversary proceeding.

14

MIKULEN STIP. EX. C.  The parties stipulated that the Mikulen Compensation Disclosure filed on February 26, 2009, did not accurately reflect Ms. Mikulen's contractual fee agreement with Clark & Washington and Mr. Crawford.  MIKULEN STIPS. at ¶ 7.

On April 6, 2009, the United States Trustee filed a Motion to Require Disgorgement of Fees and to Compel Amendment to FRBC 2016(b) and Schedule F and Notice of Hearing (Mikulen Disgorgement Motion), seeking an order requiring Mr. Crawford and Clark & Washington to amend the Mikulen Compensation Disclosure to accurately reflect the fee arrangement with Ms. Mikulen, to amend Schedule F to list himself and Clark & Washington as creditors for unpaid pre-petition legal fees, and to disgorge all fees collected through the post-petition cashing of the post-dated checks as well as all attorneys' fees paid pre-petition.

Mr. Crawford filed a Response to Motion to Require Disgorgement of Fees and to Compel Amendment to FRBC 2016(b) and Schedule F and Notice of Hearing (Response to Mikulen Disgorgement Motion) on April 22, 2009, acknowledging that the Mikulen Compensation Disclosure did not reference the post-dated checks but arguing that the firm interpreted the receipt of all post-dated checks as payment in full, that neither he nor Clark & Washington was a pre-petition creditor of Ms. Mikulen, and that disgorgement should not be allowed because their fees were reasonable and encompassed both pre-petition and post-petition services.  Additionally, Mr. Crawford filed a Disclosure of Compensation of Attorney for Debtor(s) - Amended (Amended Mikulen Compensation Disclosure) on April 9, 2009, now certifying that Ms. Mikulen had agreed to pay $1,000.00 for legal services, that no money had been paid, and that the entire balance of $1,000.00, to be paid from her earnings, was still due, "[t]o be paid at $200 per month on 3/27/09,

15

4/24/09, 5/29/09, 6/26/09, and 7/31/09." Mikulen Stip. Ex. B.  With respect to the legal services

included within the fee, Mr. Crawford certifies the following in the Amended Mikulen

Compensation Disclosure:

> 6.  In return for the above-disclosed fee, I have agreed to render legal service for all
> aspects of the bankruptcy case, including:
>
>> Analysis of the debtor's financial situation and rendering advice to the debtor
>> in determining whether to file a bankruptcy petition;
>>
>> Preparation and filing of any petition, schedules, statement of affairs;
>>
>> Representation of the debtor at the 341 meeting of creditors and any
>> adjourned hearings thereof.
>
> 7.  By agreement with the debtor(s), the above-disclosed fee does not include the
> following service:
>
>> Any contested matters in this Chapter 7 case, including Adversary
>> Proceedings, Objections to Exemptions, or any objections to Discharge and
>> Dischargeability.  These will be charged additional attorney fees at the rate
>> of $ 295 per hour.
>>
>> Reaffirmation agreements $ 50; Redemptions $ 350; Amendments $ 104;
>>
>> As necessary: Judicial lien avoidances $ 150; Defense of misc.
>> motions/Relief from Stay Actions $ 245 per hour; Excess Creditors $ 50;
>> Misc. letters $ 50; E-mail/faxes/creditors $ 15; Reopen closed case $ 100;
>> Closed records .25 pp

Mikulen Stip. Ex. B.  The parties stipulated that the Amended Mikulen Compensation Disclosure

accurately reflects Ms. Mikulen's contract with Clark & Washington and Mr. Crawford, and that the

$1,250.00 fee was "a flat fee for legal services related to the filing of chapter 7 bankruptcies, which

is defined as a fee for all services, both pre- and post-filing, related to the bankruptcy case, except

for post-petition services specifically listed[.]" Mikulen Stips. at ¶¶ 6, 8.

### Clayton Gadson Cooley

On January 23, 2009, the Debtor in case number 09-30990, Clayton Gadson Cooley, retained Clark & Washington and Mr. Crawford, the managing attorney of its Knoxville office, to represent him in the filing of his Chapter 7 bankruptcy case. COOLEY STIPS. at ¶¶ 1, 15. In association with this representation, Mr. Cooley executed a Chapter 7 Attorney-Client Agreement For Routine Cases Under 11 U.S.C. Chapter 7 (Cooley Engagement Contract) on January 23, 2009, outlining his duties, as well as those of Mr. Crawford and Clark & Washington, whereby he agreed, *inter alia*, to pay Mr. Crawford and Clark & Washington a flat fee in the amount of $800.00 for legal services related to the filing of his bankruptcy case, to be performed both pre-petition and post-petition, plus the $299.00 filing fee. COOLEY STIPS. at ¶ 6; COOLEY STIP. EX. D.[5] Additionally, the Cooley Engagement Contract contains the following Acknowledgment executed by Mr. Cooley:

> I further acknowledge and agree that this retainer contract contemplates payment for services rendered pre-Petition as well as services to be rendered post-Petition. The initial payment represents fees earned pre-Petition and the future payments are to be applied as contemporaneous compensation for post-Petition services.

COOLEY STIP. EX. D. Mr. Cooley was not informed by Clark & Washington and/or Mr. Crawford that, to the extent not paid prior to the filing of his petition, his attorneys' fees were dischargeable. COOLEY STIPS. at ¶ 14.

As payment of the $800.00 attorney fee, and as is routine for Clark & Washington and Mr. Crawford for collecting payment of flat fees for Chapter 7 bankruptcy cases, Mr. Cooley provided

---

[5] On page one of the Cooley Engagement Contract, the typewritten $1,250.00 for attorneys' fees was crossed out and $800.00 was handwritten in; however, the final page, titled Fee Summary, still reflects attorneys' fees of $1,250.00. COOLEY STIP. EX. D.

Clark & Washington and Mr. Crawford with two $160.00 post-dated checks on February 20, 2009,

drawn on his checking account at SunTrust Bank, and with three additional $160.00 post-dated

checks on February 23, 2009:  (a) check #1902, dated March 6, 2009, was deposited into the Clark

& Washington bank account on March 10, 2009; (b) check #1903, dated April 6, 2009, which was

not deposited into the Clark & Washington bank account; (c) check #1904, dated May 6, 2009,

which was not deposited into the Clark & Washington bank account; (d) check #1905, dated June 6,

2009, which was not deposited into the Clark & Washington bank account; and (e) check #1906,

dated July 6, 2009, which was not deposited into the Clark & Washington bank account.  COOLEY

STIPS. at ¶¶ 2, 9-10; COOLEY STIP. EX. A.

Mr. Cooley filed the Voluntary Petition commencing his Chapter 7 bankruptcy case on

February 26, 2009, and received a discharge on September 14, 2009.  COOLEY STIPS. at ¶ 3.[6]  Also

filed with his Voluntary Petition was the Disclosure of Compensation of Attorney for Debtor(s)

signed by Mr. Crawford (Cooley Compensation Disclosure), certifying that he had agreed to accept

$800.00 from Mr. Cooley and that he had received the full $800.00 prior to the filing of the Cooley

Compensation Disclosure.  COOLEY STIPS. at ¶ 7; COOLEY STIP. EX. C.  In addition, the Cooley

Compensation Disclosure states the following:

> 6.  In return for the above-disclosed fee, I have agreed to render legal service for all
> aspects of the bankruptcy case, including:
>
> > Negotiations with secured creditors to reduce to market value; exemption
> > planning; preparation and filing of reaffirmation agreements and applications
> > as needed; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A)
> > for avoidance of liens on household goods.

---

[6] Paragraph 5 of the Joint Stipulations state that Mr. Cooley had not yet received a discharge.  The discharge
was, however, granted subsequent to the filing of the Joint Stipulations.

7.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:

> Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding.

COOLEY STIP. EX. C.  The parties stipulated that the Cooley Compensation Disclosure filed on February 26, 2009, did not accurately reflect Mr. Cooley's contractual fee agreement with Clark & Washington and Mr. Crawford.  COOLEY STIPS. at ¶ 7.

On April 6, 2009, the United States Trustee filed a Motion to Require Disgorgement of Fees and to Compel Amendment to FRBC 2016(b) and Schedule F and Notice of Hearing (Cooley Disgorgement Motion), seeking an order requiring Mr. Crawford and Clark & Washington to amend the Cooley Compensation Disclosure to accurately reflect the fee arrangement with Mr. Cooley, to amend Schedule F to list himself and Clark & Washington as creditors for unpaid pre-petition legal fees, and to disgorge all fees collected through the post-petition cashing of the post-dated checks as well as all attorneys' fees paid pre-petition.

Mr. Crawford filed a Response to Motion to Require Disgorgement of Fees and to Compel Amendment to FRBC 2016(b) and Schedule F and Notice of Hearing (Response to Cooley Disgorgement Motion) on April 22, 2009, acknowledging that the Cooley Compensation Disclosure did not reference the post-dated checks but arguing that the firm interpreted the receipt of all post-dated checks as payment in full, that neither he nor Clark & Washington was a pre-petition creditor of Mr. Cooley, and that disgorgement should not be allowed because their fees were reasonable and encompassed both pre-petition and post-petition services.  Additionally, Mr.

19

Crawford filed a Disclosure of Compensation of Attorney for Debtor(s) - Amended (Amended

Cooley Compensation Disclosure) on April 8, 2009, now certifying that Mr. Cooley had agreed to

pay $800.00 for legal services, that no money had been paid, and that the entire balance of $800.00,

to be paid from his earnings, was still due, "[t]o be paid at $160 per month on 3/6/09, 4/6/09, 5/6/09,

6/6/09, and 7/6/09." COOLEY STIP. EX. B. With respect to the legal services included within the fee,

Mr. Crawford certifies the following in the Amended Cooley Compensation Disclosure:

> 6. In return for the above-disclosed fee, I have agreed to render legal service for all
> aspects of the bankruptcy case, including:
>
>> Analysis of the debtor's financial situation and rendering advice to the debtor
>> in determining whether to file a bankruptcy petition;
>>
>> Preparation and filing of any petition, schedules, statement of affairs;
>>
>> Representation of the debtor at the 341 meeting of creditors and any
>> adjourned hearings thereof.
>
> 7. By agreement with the debtor(s), the above-disclosed fee does not include the
> following service:
>
>> Any contested matters in this Chapter 7 case, including Adversary
>> Proceedings, Objections to Exemptions, or any objections to Discharge and
>> Dischargeability.  These will be charged additional attorney fees at the rate
>> of $ 295 per hour.
>>
>> Reaffirmation agreements $ 50; Redemptions $ 350; Amendments $ 104;
>>
>> As necessary: Judicial lien avoidances $ 150; Defense of misc. motions/
>> Relief from Stay Actions $ 245 per hour; Excess Creditors $ 50; Misc. letters
>> $ 50; E-mail/faxes/creditors $ 15; Reopen closed case $ 100; Closed records
>> .25 pp

COOLEY STIP. EX. B.  The parties stipulated that the Amended Cooley Compensation Disclosure

accurately reflects Mr. Cooley's contract with Clark & Washington and Mr. Crawford, and that the

$1,250.00 fee was "a flat fee for legal services related to the filing of chapter 7 bankruptcies, which

20

is defined as a fee for all services, both pre- and post-filing, related to the bankruptcy case, except for post-petition services specifically listed[.]" COOLEY STIPS. at ¶¶ 6, 8.

### Crystal Michelle Jones

On February 23, 2009, the Debtor in case number 09-30991, Crystal Michelle Jones, retained Clark & Washington and Mr. Crawford, the managing attorney of its Knoxville office, to represent her in the filing of her Chapter 7 bankruptcy case. JONES STIPS. at ¶¶ 1, 14. In association with this representation, Ms. Jones executed a Chapter 7 Attorney-Client Agreement For Routine Cases Under 11 U.S.C. Chapter 7 (Jones Engagement Contract) on February 23, 2009, outlining her duties, as well as those of Mr. Crawford and Clark & Washington, whereby she agreed, *inter alia*, to pay Mr. Crawford and Clark & Washington a flat fee in the amount of $800.00 for legal services related to the filing of her bankruptcy case, to be performed both pre-petition and post-petition, plus the $299.00 filing fee. JONES STIPS. at ¶ 6; JONES STIP. EX. E. Additionally, the Jones Engagement Contract contains the following Acknowledgment executed by Ms. Jones:

> I further acknowledge and agree that this retainer contract contemplates payment for services rendered pre-Petition as well as services to be rendered post-Petition. The initial payment represents fees earned pre-Petition and the future payments are to be applied as contemporaneous compensation for post-Petition services.

JONES STIP. EX. E. Ms. Jones was not informed by Clark & Washington and/or Mr. Crawford that, to the extent not paid prior to the filing of her petition, their attorneys' fees were dischargeable. JONES STIPS. at ¶ 13.

As payment of the $800.00 attorney fee, and as is routine for Clark & Washington and Mr. Crawford for collecting payment of flat fees for Chapter 7 bankruptcy cases, Ms. Jones provided

Clark & Washington and Mr. Crawford with four $200.00 post-dated checks drawn on her checking account at Y-12 Federal Credit Union on February 23, 2009:  (a) check #1064, dated March 3, 2009, was deposited into the Clark & Washington bank account on March 5, 2009; (b) check #1065, dated April 3, 2009, was deposited into the Clark & Washington bank account on May 7, 2009, and returned due to insufficient funds on May 20, 2009; (c) check #1066, dated May 3, 2009, was deposited into the Clark & Washington bank account on May 7, 2009, and returned due to insufficient funds on May 20, 2009; and (d) check #1067, dated June 3, 2009, was deposited into the Clark & Washington bank account on June 3, 2009, and returned due to insufficient funds on June 26, 2009.  JONES STIPS. at ¶¶ 2, 4, 9-10; JONES STIP. EX. A.  The parties stipulated that upon notification that a post-dated check has not been honored due to insufficient funds, Clark & Washington and Mr. Crawford generate and send correspondence and/or make telephone calls to debtors in order to collect the fee.  JONES STIPS. at ¶ 12.  Clark & Washington sent two collection letters, both dated May 20, 2009, to Ms. Jones concerning checks returned for insufficient funds and her balance due at that time of $450.00.  JONES STIPS. at ¶ 4; JONES STIP. COLL. EX. B.

Ms. Jones filed the Voluntary Petition commencing her Chapter 7 bankruptcy case on February 26, 2009, and received a discharge on June 16, 2009.  JONES STIPS. at ¶¶ 3, 5.  Also filed with her Voluntary Petition was the Disclosure of Compensation of Attorney for Debtor(s) signed by Mr. Crawford (Jones Compensation Disclosure), certifying that he had agreed to accept $800.00 from Ms. Jones and that he had received the full $800.00 prior to the filing of the Jones Compensation Disclosure.  JONES STIPS. at ¶ 7; JONES STIP. EX. D.   In addition, the Jones Compensation Disclosure states the following:

6. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

> Negotiations with secured creditors to reduce to market value; exemption planning; preparation and filing of reaffirmation agreements and applications as needed; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A) for avoidance of liens on household goods.

7. By agreement with the debtor(s), the above-disclosed fee does not include the following service:

> Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding.

JONES STIP. EX. D. The parties stipulated that the Jones Compensation Disclosure filed on February 26, 2009, did not accurately reflect Ms. Jones' contractual fee agreement with Clark & Washington and Mr. Crawford. JONES STIPS. at ¶ 7.

On April 6, 2009, the United States Trustee filed a Motion to Require Disgorgement of Fees and to Compel Amendment to FRBC 2016(b) and Schedule F and Notice of Hearing (Jones Disgorgement Motion), seeking an order requiring Mr. Crawford and Clark & Washington to amend the Jones Compensation Disclosure to accurately reflect the fee arrangement with Ms. Jones, to amend Schedule F to list himself and Clark & Washington as creditors for unpaid pre-petition legal fees, and to disgorge all fees collected through the post-petition cashing of the post-dated checks as well as all attorneys' fees paid pre-petition.

Mr. Crawford filed a Response to Motion to Require Disgorgement of Fees and to Compel Amendment to FRBC 2016(b) and Schedule F and Notice of Hearing (Response to Jones Disgorgement Motion) on April 22, 2009, acknowledging that the Jones Compensation Disclosure did not reference the post-dated checks but arguing that the firm interpreted the receipt of all

23

post-dated checks as payment in full, that neither he nor Clark & Washington was a pre-petition creditor of Ms. Jones, and that disgorgement should not be allowed because their fees were reasonable and encompassed both pre-petition and post-petition services.  Additionally, Mr. Crawford filed a Disclosure of Compensation of Attorney for Debtor(s) - Amended (Amended Jones Compensation Disclosure) on April 8, 2009, now certifying that Ms. Jones had agreed to pay $800.00 for legal services, that no money had been paid, and that the entire balance of $800.00, to be paid from her earnings, was still due, "[t]o be paid at $200 per month on 3/3/09, 4/3/09, 5/3/09, and 6/3/09."  JONES STIP. EX. C.  With respect to the legal services included within the fee, Mr. Crawford certifies the following in the Amended Jones Compensation Disclosure:

> 6.  In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
>
>> Analysis of the debtor's financial situation and rendering advice to the debtor in determining whether to file a bankruptcy petition;
>>
>> Preparation and filing of any petition, schedules, statement of affairs;
>>
>> Representation of the debtor at the 341 meeting of creditors and any adjourned hearings thereof.
>
> 7.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:
>
>> Any contested matters in this Chapter 7 case, including Adversary Proceedings, Objections to Exemptions, or any objections to Discharge and Dischargeability.  These will be charged additional attorney fees at the rate of $ 295 per hour.
>>
>> Reaffirmation agreements $ 50; Redemptions $ 350; Amendments $ 104;
>>
>> As necessary: Judicial lien avoidances $ 150; Defense of misc. motions/ Relief from Stay Actions $ 245 per hour; Excess Creditors $ 50; Misc. letters $ 50; E-mail/faxes/creditors $ 15; Reopen closed case $ 100; Closed records .25 pp

JONES STIP. EX. C.   The parties stipulated that the Amended Jones Compensation Disclosure accurately reflects Ms. Jones' contract with Clark & Washington and Mr. Crawford, and that the $1,250.00 fee was "a flat fee for legal services related to the filing of chapter 7 bankruptcies, which is defined as a fee for all services, both pre- and post-filing, related to the bankruptcy case, except for post-petition services specifically listed[.]"  JONES STIPS. at ¶¶ 6, 8.

### William Ray Joines, II

On December 9, 2008, the Debtor in case number 08-35781, William Ray Joines, II, retained Clark & Washington and Mr. Crawford, the managing attorney of its Knoxville office, to represent him in the filing of his Chapter 7 bankruptcy case.  JOINES STIPS. at ¶¶ 1, 15.  In association with this representation, Mr. Joines executed a Chapter 7 Attorney-Client Agreement For Routine Cases Under 11 U.S.C. Chapter 7 (Joines Engagement Contract) on December 9, 2008, outlining his duties, as well as those of Mr. Crawford and Clark & Washington, whereby he agreed, *inter alia*, to pay Mr. Crawford and Clark & Washington a flat fee in the amount of $1,250.00 for legal services related to the filing of his bankruptcy case, to be performed both pre-petition and post-petition, plus the $299.00 filing fee.  JOINES STIPS. at ¶ 6; JOINES STIP. EX. D.  Additionally, the Joines Engagement Contract contains the following Acknowledgment executed by Mr. Joines:

> I further acknowledge and agree that this retainer contract contemplates payment for services rendered pre-Petition as well as services to be rendered post-Petition.  The initial payment represents fees earned pre-Petition and the future payments are to be applied as contemporaneous compensation for post-Petition services.

25

JOINES STIP. EX. D.  Mr. Joines was not informed by Clark & Washington and/or Mr. Crawford that, to the extent not paid prior to the filing of his petition, their attorneys' fees were dischargeable. JOINES STIPS. at ¶ 14.

As payment of the $1,250.00 attorney fee, and as is routine for Clark & Washington and Mr. Crawford for collecting payment of flat fees for Chapter 7 bankruptcy cases, Mr. Joines provided Clark & Washington and Mr. Crawford with five post-dated checks on December 17, 2008, drawn on his checking account with AmSouth Bank/Regions Bank:  (a) check #0941 in the amount of $249.00, dated January 8, 2009, was deposited into the Clark & Washington bank account on January 9, 2009, was replaced with a $249.00 cash payment from the Debtor on January 15, 2009, and returned due to insufficient funds on January 24, 2009; (b) check #0942, dated February 12, 2009, was not deposited into the Clark & Washington bank account but was replaced on January 15, 2009, with check #1005 in the amount of $250.00, dated February 12, 2009, which was deposited into the Clark & Washington bank account on February 17, 2009; (c) check #0943, dated March 12, 2009, which was not deposited into the Clark & Washington bank account but was replaced on January 15, 2009, with check #1006 in the amount of $250.00, dated March [] 2009, was deposited into the Clark & Washington bank account on March 21, 2009; (d) check #0944, dated April 9, 2009, which was not deposited into the Clark & Washington bank account but was replaced on January 15, 2009, with check #1007 in the amount of $250.00, dated April 19, 2009, was deposited into the Clark & Washington bank account on April 27, 2009; and (e) check #0945, dated May 14, 2009, which was not deposited into the Clark & Washington bank account but was replaced on January 15, 2009, with check #1008 in the amount of $250.00, dated May 14, 2009, was deposited into the Clark

& Washington bank account on May 14, 2009. JOINES STIPS. at ¶¶ 2, 4, 9-10; JOINES STIP. EX. A. The parties stipulated that upon notification that a post-dated check has not been honored due to insufficient funds, Clark & Washington and Mr. Crawford generate and send correspondence and/or make telephone calls to debtors in order to collect the fee. JOINES STIPS. at ¶ 13. Mr. Joines subsequently paid check #0941 in cash on January 15, 2009, and the $25.00 NSF fee was waived. JOINES STIPS. at ¶ 2.

Mr. Joines filed the Voluntary Petition commencing his Chapter 7 bankruptcy case on December 23, 2008, and received a discharge on April 14, 2009. JOINES STIPS. at ¶¶ 3, 5. Also filed with his Voluntary Petition was the Disclosure of Compensation of Attorney for Debtor(s) signed by Mr. Crawford (Joines Compensation Disclosure), certifying that he had agreed to accept $1,250.00 from Mr. Joines and that he had received the full $1,250.00 prior to the filing of the Joines Compensation Disclosure. JOINES STIPS. at ¶ 7; JOINES STIP. EX. C. In addition, the Joines Compensation Disclosure states the following:

> 6. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
>
> > Negotiations with secured creditors to reduce to market value; exemption planning; preparation and filing of reaffirmation agreements and applications as needed; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A) for avoidance of liens on household goods.
>
> 7. By agreement with the debtor(s), the above-disclosed fee does not include the following service:
>
> > Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding.

27

JOINES STIP. EX. C.  The parties stipulated that the Joines Compensation Disclosure filed on December 23, 2008, did not accurately reflect Mr. Joines' contractual fee agreement with Clark & Washington and Mr. Crawford.  JOINES STIPS. at ¶ 8.

On May 15, 2009, the United States Trustee filed a Motion for Sanctions for Violations of 11 U.S.C. § 362(a)(6) and § 524(a)(2) (Joines Motion for Sanctions), seeking an order imposing sanctions against Mr. Crawford and Clark & Washington and requiring disgorgement of all fees collected through the post-petition and post-discharge cashing of the post-dated checks as well as all attorneys' fees paid pre-petition.  Mr. Crawford did not file a response to the Motion for Sanctions; however, by agreement of the parties, this contested matter was consolidated for hearing with the Disgorgement Motions.  Additionally, Mr. Crawford filed a Disclosure of Compensation of Attorney for Debtor(s) - Amended (Amended Joines Compensation Disclosure) on July 10, 2009, now certifying that Mr. Joines had agreed to pay $1,250.00 for legal services, that no money had been paid, and that the entire balance of $1,250.00, to be paid from his earnings, was still due, "[t]o be paid at $250 on 1/8/09; 2/12/09; 3/12/09; 4/9/09; & 5/14/09."  JOINES STIP. EX. B.  With respect to the legal services included within the fee, Mr. Crawford certifies the following in the Amended Joines Compensation Disclosure:

> 6.  In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
>
> > Analysis of the debtor's financial situation and rendering advice to the debtor in determining whether to file a bankruptcy petition;
> >
> > Preparation and filing of any petition, schedules, statement of affairs;
> >
> > Representation of the debtor at the 341 meeting of creditors and any adjourned hearings thereof.

28

Debtor further acknowledges and agrees that the retainer contract contemplates payment for services rendered pre Petition as well as services to be rendered post-Petition. The initial payment represents fees earned pre-Petition and the future payments are to be applied as contemporaneous compensation for post-Petition services.

7.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:

As necessary;

Amendments $104; Reaffirmation agreements $ 50; Redemptions $ 350;

For any adversary proceeding a different contract of employment shall be executed between the parties under such terms and conditions as the parties deem mutually acceptable.

JOINES STIP. EX. B.  The parties stipulated that the Amended Joines Compensation Disclosure accurately reflects Mr. Joines' contract with Clark & Washington and Mr. Crawford, and that the $1,250.00 fee was "a flat fee for legal services related to the filing of chapter 7 bankruptcies, which is defined as a fee for all services, both pre- and post-filing, related to the bankruptcy case, except for post-petition services specifically listed[.]"  JOINES STIPS. at ¶¶ 7, 9.

### William Edgar Scharff, Jr. and Michelle Angelique Scharff

On November 20, 2008, the Debtors in case number 08-35658, William Edgar Scharff, Jr. and Michelle Angelique Scharff (the Scharffs), retained Clark & Washington and Mr. Crawford, the managing attorney of its Knoxville office, to represent them in the filing of their Chapter 7 bankruptcy case.  SCHARFF STIPS. at ¶¶ 1, 14.  In association with this representation, the Scharffs executed a Chapter 7 Attorney-Client Agreement For Routine Cases Under 11 U.S.C. Chapter 7 (Scharff Engagement Contract) on November 20, 2008, outlining their duties, as well as those of Mr.

29

Crawford and Clark & Washington, whereby they agreed, *inter alia*, to pay Mr. Crawford and Clark

& Washington a flat fee in the amount of $1,000.00 for legal services related to the filing of their

bankruptcy case, to be performed both pre-petition and post-petition, plus the $299.00 filing fee.

SCHARFF STIPS. at ¶ 6; SCHARFF STIP. EX. E.   Additionally, the Scharff Engagement Contract

contains the following Acknowledgment executed by the Scharffs:

> I further acknowledge and agree that this retainer contract contemplates payment for
> services rendered pre-Petition as well as services to be rendered post-Petition.  The
> initial payment represents fees earned pre-Petition and the future payments are to be
> applied as contemporaneous compensation for post-Petition services.

SCHARFF STIP. EX. D.  The Scharffs were not informed by Clark & Washington and/or Mr. Crawford

that, to the extent not paid prior to the filing of their petition, their attorneys' fees were

dischargeable.  SCHARFF STIPS. at ¶ 13.

As payment of the $1,000.00 attorney fee, and as is routine for Clark & Washington and Mr.

Crawford for collecting payment of flat fees for Chapter 7 bankruptcy cases, the Scharffs paid $1.00

in cash and provided Clark & Washington and Mr. Crawford with six post-dated checks on

December 11, 2008, drawn on their checking account with Bank of America, each in the amount of

$165.00:  (a) check #1229, dated January 15, 2009, in the amount of $165.00, was deposited into the

Clark & Washington bank account on January 15, 2009, and returned due to insufficient funds on

February 5, 2009; (b) check #1230, dated February 15, 2009, in the amount of $165.00, was

deposited into the Clark & Washington bank account on February 17, 2009, and returned due to

insufficient funds on March 7, 2009; (c) check #1231, dated March 15, 2009, in the amount of

$165.00, was deposited into the Clark & Washington bank account on March 18, 2009, and returned

due to insufficient funds on April 2, 2009; (d) check #1232, dated April 15, 2009, in the amount of

$165.00, was deposited into the Clark & Washington bank account on April 16, 2009, and returned due to insufficient funds on May 5, 2009; (e) check #1233, dated May 15, 2009, in the amount of $165.00, was deposited into the Clark & Washington bank account on May 15, 2009, and returned due to insufficient funds on May 26, 2009; and (e) check #1234, dated June 15, 2009, in the amount of $174.00, was not deposited into the Clark & Washington bank account. SCHARFF STIPS. at ¶¶ 2, 4, 9-10; SCHARFF STIP. EX. A. The parties stipulated that upon notification that a post-dated check has not been honored due to insufficient funds, Clark & Washington and Mr. Crawford generate and send correspondence and/or make telephone calls to debtors in order to collect the fee. SCHARFF STIPS. at ¶ 12. Clark & Washington made telephone calls and sent six collection letters, dated February 5, 2009, March 7, 2009, April 2, 2009, May 5, 2009, May 26, 2009, and July 10, 2009, to the Scharffs concerning the five checks returned for insufficient funds. SCHARFF STIPS. at ¶ 4; SCHARFF STIP. COLL. EX. B. The Scharffs subsequently paid checks #1229 and #1230 in cash on February 23, 2009, and March 25, 2009, along with a $25.00 NSF fee for each check. SCHARFF STIPS. at ¶ 2.

The Scharffs filed the Voluntary Petition commencing their Chapter 7 bankruptcy case on December 16, 2008, and received a discharge on May 27, 2009. SCHARFFS STIPS. at ¶¶ 3, 5. Also filed with their Voluntary Petition was the Disclosure of Compensation of Attorney for Debtor(s) signed by Mr. Crawford (Scharff Compensation Disclosure), certifying that he had agreed to accept $1,000.00 from the Scharffs and that he had received the full $1,000.00 prior to the filing of the Scharff Compensation Disclosure. SCHARFF STIPS. at ¶ 7; SCHARFF STIP. EX. D. In addition, the Scharff Compensation Disclosure states the following:

31

6.  In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

> Negotiations with secured creditors to reduce to market value; exemption planning; preparation and filing of reaffirmation agreements and applications as needed; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A) for avoidance of liens on household goods.

7.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:

> Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding.

SCHARFF STIP. EX. C.  The parties stipulated that the Scharff Compensation Disclosure filed on December 16, 2008, did not accurately reflect the Scharffs' contractual fee agreement with Clark & Washington and Mr. Crawford.  SCHARFF STIPS. at ¶ 7.

On May 15, 2009, the United States Trustee filed a Motion for Sanctions for Violation of 11 U.S.C. § 362 (Scharff Motion for Sanctions), seeking an order imposing sanctions against Mr. Crawford and Clark & Washington for making telephone calls and sending letters to collect upon the NSF checks and requiring disgorgement of all fees collected through the post-petition cashing of the post-dated checks as well as all attorneys' fees paid pre-petition.  Mr. Crawford did not file a response to the Motion for Sanctions; however, by agreement of the parties, this contested matter was consolidated for hearing with the Disgorgement Motions.  Additionally, Mr. Crawford filed a Disclosure of Compensation of Attorney for Debtor(s) - Amended (Amended Scharff Compensation Disclosure) on April 17, 2009, stating that the Scharffs had agreed to pay $1,000.00 for legal services, that $1.00 had been paid, and that the remaining balance of $999.00, to be paid from their earnings, was still due, "[t]o be paid at $165 on 1/15/09; 2/15/09; 3/15/09; 4/15/09; 5/15/09 and at

32

$174.00 on 6/15/09." SCHARFF STIP. EX. C. With respect to the legal services included within the

fee, the Amended Scharff Compensation Disclosure states as follows:

> 6. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

>> Analysis of the debtor's financial situation and rendering advice to the debtor in determining whether to file a bankruptcy petition;

>> Preparation and filing of any petition, schedules, statement of affairs;

>> Representation of the debtor at the 341 meeting of creditors and any adjourned hearings thereof.

>> Debtor further acknowledges and agrees that the retainer contract contemplates payment for services rendered pre Petition as well as services to be rendered post-Petition. The initial payment represents fees earned pre-Petition and the future payments are to be applied as contemporaneous compensation for post-Petition services.

> 7. By agreement with the debtor(s), the above-disclosed fee does not include the following service:

>> Amendments $104;

>> For any adversaray [sic] proceeding a different contract of employment shall be executed between the parties under such terms and conditions as the parties deem mutually acceptable.

SCHARFF STIP. EX. C. The parties have stipulated that the Amended Scharff Compensation

Disclosure accurately reflects the Scharffs' contract with Clark & Washington and Mr. Crawford,

and that the $1,250.00 fee was "a flat fee for legal services related to the filing of chapter 7

bankruptcies, which is defined as a fee for all services, both pre- and post-filing, related to the

bankruptcy case, except for post-petition services specifically listed[.]" SCHARFF STIPS. at ¶¶ 6, 8.

## II

The issues the court is called upon to resolve, as defined by the parties in the Amended Agreed Pretrial Order entered on June 26, 2009, are as follows:

a.  What was the nature of the attorney's contract with each client as to whether it was a flat fee or a bifurcated fee and if that agreement complies with the Bankruptcy Code;

b.  Did the original FRBP 2016 disclosure[s] accurately reflect the contract between the attorney and [each] debtor;

c.  Is the deposit of a post-dated check or other correspondence, such as a phone call or letter, post-petition[,] a violation of the automatic stay pursuant to 11 U.S.C. § 362(a)(6);

d.  Is the deposit of a post-dated check or other correspondence, such as a phone call or letter, post-discharge[,] a violation of 11 U.S.C. § 524's permanent injunction;

e.  Does Clark & Washington advise debtors that the pre-petition attorney fee is one that is of the kind that would be discharged in bankruptcy[; and]

f.  Due to the failure of Clark & Washington to advise debtors that [their] pre-petition attorney fee would be discharged in their bankruptcy, should they be ordered to disgorge their fees pursuant to 11 U.S.C. § 329(b) in that the compensation exceeded the reasonable value of their services?

Because these issues are based upon substantially identical facts, they will be analyzed collectively.

Each of the Debtors entered into a Chapter 7 Attorney-Client Agreement for Routine Cases Under 11 U.S.C. Chapter 7 [Engagement Contract] with Mr. Crawford and Clark & Washington. These seven Engagement Contracts, with the exception of the amount of the fee charged the respective Debtors, are identical and each begins with the following language:

> It is hereby agreed by the undersigned "Attorney" and "Client" that Attorney shall represent Client in a case under Title 11 USC Chapter 7. Client agrees to an attorney fee of _____.
>
> This fee does not include court filing costs; Client shall be responsible for all court and credit counseling costs associated with this case. Client agrees to pay an additional fee of $104.00 plus court costs of $26.00 for each amendment filed, post-Petition, to include, list, or disclose any information which Client failed to provide to Attorney prior to the filing of Client's case.[7] This agreement is predicated upon the completeness and accuracy of the relevant information provided to Attorney by Client. All fees paid by Client for the purpose of filing this Chapter 7 petition are NON-REFUNDABLE.

ENGAGEMENT CONTRACT at 1.[8]

Regarding the duties of Clark & Washington and Mr. Crawford, the Engagement Contract expressly provides as follows:

---

[7] The only amendment requiring payment by a debtor of a $26.00 filing fee is an amendment to a debtor's schedules of creditors or lists of creditors. The court presumes that Mr. Crawford and Clark & Washington are not attempting to collect a post-petition filing fee for any other amendment.

[8] The pages of the seven Engagement Contracts stipulated by the parties are numbered in some cases, not numbered in other cases, and in still other cases, misnumbered. The page numbers cited to by the court represent the actual page of the Engagement Contract on which the referenced paragraphs appear without regard to any page number appearing on these documents.

It is further agreed that:

(1) Attorney's Duties:  Attorney shall meet and consult with Client as needed, prepare the Petition, Form 22(a), Statement Financial of Affairs [sic], Schedules and Summary as required by the Bankruptcy Code or Local Rules, as well as any other pleadings which are necessary or appropriate during the case, and file same with the Clerk of the United States Bankruptcy Court.  Attorney shall attend all hearings as set forth in paragraph (7) below.

. . . .

(7) Court Hearings:  Attorney shall appear at the 341 Meeting of Creditors and any other hearings or proceedings required in Client's case.  Client shall attend the 341 Meeting of Creditors and any other hearing or proceeding required in Client's case.

ENGAGEMENT CONTRACT at 1, 2.  The Engagement Contract provides for only one "carve out" of services other than amendments, which is expressly addressed in the second paragraph on the first page of the Engagement Contract, referenced above:

(19) ADVERSARY PROCEEDINGS: the parties specifically agree that the services contemplated in this contract of employment DO NOT include representing Client, either as a Plaintiff or Defendant, in any Adversary Proceeding filed in or in connection with this case.  Should Attorney agree to represent Client in an adversary proceeding, a different contract of employment shall be executed between the parties under such terms and conditions as the parties deem mutually acceptable.

ENGAGEMENT CONTRACT at 4.  No other section of the Engagement Contract addresses carve-outs or additional fees, notwithstanding that the parties have erroneously stipulated in each case that the Engagement Contract "is accurately reflected in the last amended FRBP 2016 Disclosure" filed by Clark & Washington and Mr. Crawford, each of which, with the exception of the Scharff Amended Compensation Disclosure, states that the disclosed attorneys' fee does not include adversary proceedings, amendments, reaffirmation agreements and redemptions. WALDO, JOHNSON, MIKULEN,

36

COOLEY, JONES, SCHARFF STIPS. at ¶ 8; JOINES STIP. at ¶ 9;[9] WALDO, JOHNSON, MIKULEN, COOLEY, JOINES STIP. EX. B; JONES, SCHARFF STIP. EX. C.

The Bankruptcy Code calls upon courts to review and determine the reasonableness of the compensation paid or agreed to be paid a debtor's attorney and compensation may be reduced if found unreasonable.  *See* 11 U.S.C. § 329 (2006); FED. R. BANKR. P. 2017.  The reasonableness of fees is within the court's discretion, to be determined based upon "the nature, the extent, and the value of such services," in conjunction with "the surrounding facts and circumstances, including the customary fee in comparable cases."  *In re Geraci*, 138 F.3d 314, 319 (7th Cir. 1998).  The attorney to receive the fee bears the burden of showing its reasonableness; however, "an attorney . . . is not always entitled to the fee that the debtor has agreed to pay him."  *Geraci*, 138 F.3d at 318, 320; *In re Jackson*, 401 B.R. 333, 341 (Bankr. N.D. Ill. 2009).  Factors to be considered include the time spent on services, the rates charged, the necessity of the services provided, and the customary compensation charged by others.  *In re Datta*, 2009 WL 194174, at *4, 2009 Bankr. LEXIS 1856, at *10-11 (Bankr. E.D.N.Y July 2, 2009) (quoting 11 U.S.C. § 330(a)(3) as a starting point in the analysis).

In support of their practice of accepting post-dated checks, Clark & Washington and Mr. Crawford argue that the nature of the Engagement Contract with the respective Debtors provides for a flat, yet bifurcated fee, such that any pre-petition payments received were for pre-petition services performed, while the post-dated checks constituted payments for all post-petition services performed.

---

[9] The Scharff Amended Compensation Disclosure reflects that the Debtors will be charged an additional fee for any amendments and adversary proceedings but does not reference reaffirmation agreements or redemptions. SCHARFF STIP. EX. B.

> A growing number of bankruptcy courts have adopted and implemented "no look" or presumptive fees, most commonly in chapter 13 cases, but also in chapter 7 cases. [T]his type of standardization, or uniform fee guideline, promotes efficiency by relieving the courts of the administrative burden of reviewing numerous attorney's fee applications; encourages predictability and efficiency for all involved in a chapter 7 or 13 case; and saves time for the court, trustees and the attorneys who represent debtors.

*In re Williams*, 357 B.R. 434, 439 n.3 (B.A.P. 6th Cir. 2007) (citations omitted).[10]  These presumptive fees include "normal, ordinary, and fundamental services of the chapter 7 process" that are provided to typical debtors, usually including "pre-bankruptcy consultation, schedule preparation, representation of debtor at the meeting of creditors, reaffirmation agreement review, and other similar tasks."  *Williams*, 357 B.R. at 439 (citations omitted).  As previously stated in section I, *supra*, the parties stipulated that "Clark & Washington and Mr. Crawford charged [each of the Debtors] a flat fee for legal services related to the filing of chapter 7 bankruptcies, which is defined as a fee for all services, both pre- and post-filing, related to the bankruptcy case[.]"  WALDO, JOHNSON, MIKULEN, COOLEY, JONES, SCHARFF STIPS. at ¶ 6; JOINES STIP. at ¶ 7.

When paid entirely pre-petition, fees paid pursuant to a "no-look" or "flat fee" arrangement do not run afoul of the Bankruptcy Code.  The same cannot, however, be said for fees paid pursuant to a fee agreement, entered into pre-petition, which provides for payments post-petition.  In Chapter 7 cases, once the discharge is granted, debtors are no longer liable for any pre-petition debts "[e]xcept as provided in section 523 of this title[.]"  11 U.S.C. § 727(b) (2006).  The majority of courts, including the Sixth Circuit, have held that pre-petition attorney's fees are dischargeable debts

---

[10] The Local Rules of Court for the United States Bankruptcy Court for the Eastern District of Tennessee provide for a presumptive or base fee of $3,000.00 for Chapter 13 cases.  *See* E.D. Tenn. LBR 2016-1.  There is no corresponding presumptive or base fee for Chapter 7 representation, although the court is aware that the majority of Chapter 7 attorneys' fees are based upon flat fees.

under 11 U.S.C. § 727(b).  *Rittenhouse v. Eisen*, 404 F.3d 395, 396 (6th Cir. 2005); *see also Fickling v. Flower, Medalie & Markowitz, Esqs. (In re Fickling)*, 361 F.3d 172, 175 (2d Cir. 2004); *Bethea v. Robert J. Adams & Assocs.*, 352 F.3d 1125, 1128-29 (7th Cir. 2003); *Hessinger & Assocs. v. United States Trustee (In re Biggar)*, 110 F.3d 685, 688 (9th Cir. 1997).  While this notion seems clear-cut, to the extent that this "flat fee" covers services to be performed both pre- and post-petition and is paid both pre- and post-petition, there is a split of authority.

The majority view is that pre-petition agreements to pay a flat fee in post-petition installments are dischargeable debts.  *See, e.g.*, *In re Mansfield*, 394 B.R. 783, 787 (Bankr. E.D. Pa. 2008) (holding that any portion of a pre-petition flat fee which has not been paid pre-petition is dischargeable); *In re Griffin*, 313 B.R. 757, 762 (Bankr. N.D. Ill. 2004) (holding that a debtor's personal liability on the entire retainer agreement entered into pre-petition is dischargeable under § 727); *In re Chandlier*, 292 B.R. 583, 587 (Bankr. W.D. Mich. 2003) (holding that unpaid attorney's fees are not among the debts excluded from discharge).  These decisions are based primarily upon the Bankruptcy Code's exclusion of attorney's fees from the nondischargeability provisions of 11 U.S.C. § 523(a) (2006).  *See Mansfield*, 394 B.R. at 788 ("[S]ince attorneys' fees are not among the debts excepted from discharge under § 523, prepetition debts for legal fees, particularly flat fee arrangements, covering both prepetition and postpetition legal services, are dischargeable under § 727(b)."); *In re Symes*, 174 B.R. 114, 117 (Bankr. D. Ariz. 1994) ("[T]he fact that legal services were contemplated to be rendered in the bankruptcy case by the pre-petition contract will not transform pre-petition debt into nondischargeable debt, simply because that arrangement must be disclosed.  With the many enumerated statutory exceptions to discharge, if

39

Congress intended that pre-petition fee arrangements were nondischargeable, it would have so provided.").

For example, in *Chandlier*, decided by a bankruptcy court within and under the precedent of the Sixth Circuit, the court examined § 329 and its interaction with Rules 2016 and 2017, finding that while § 329 required disclosure of fees paid or to be paid, disclosure did not equate to allowance of those fees and that § 329 applied to all chapters, not merely Chapter 7, in which payment of post-petition fees were common-place and there would be an ongoing need for scrutiny by the court. *Chandlier*, 292 B.R. at 586-87. The court also analyzed Rule 1006(b)(3), § 727(b), and § 523(a), holding that exceptions to discharge for attorneys fees could be found in none of them. *Chandlier*, 292 B.R. at 587. Similarly, the *McNickle* court adopted the majority rule, "that strictly construes the Bankruptcy Code [and] holds that pre-petition legal services are subject to the discharge," *In re McNickle*, 274 B.R. 477, 480 (Bankr. S.D. Ohio 2002), and the *Todd* court, in the context of examining whether checks tendered to the debtor's attorney and insurance company pre-petition but presented for payment post-petition were property of the estate and subject to turnover, held that "[i]t is a basic facet of a Chapter 7 bankruptcy case that so long as not specifically excluded, all prepetition debts are subject to discharge[, including] prepetition legal fees." *In re Todd*, 359 B.R. 863, 867 (Bankr. N.D. Ohio 2007) (holding that the debtor was under no obligation to pay an obligation to her attorney for pre-petition services).

Conversely, the minority view is that "the postpetition rendition of legal services bargained for pursuant to a prefiling fee agreement entitles [an attorney] to recover the fees for those later

40

services[.]"  *Gordon v. Hines (In re Hines)*, 147 F.3d 1185 (9th Cir. 1998).[11]   In making its

determination, the Ninth Circuit held that since Congress had not addressed what it termed as "the

always-present problem of arranging in advance for the payment of services to be rendered after the

filing in bankruptcy[,]" it was "compelled to consider an appropriate judicial response – one that

recognizes that the very administration of the bankruptcy system requires that attorneys for Chapter

7 debtors must have a legally enforceable right for the postpetition services that were contracted for

before filing of the petition."  *Hines*, 147 F.3d at 1189, 1190-91.  Stating that "[d]espite the breadth

of the definition of 'claim' in Section 101(4)(A)[12], it must be recognized that it strains the notion

of a viable 'claim against the debtor that arose *before*' the filing of the Chapter 7 petition (Section

362(a)(6), emphasis added) to attach that label to a lawyer's ability – though agreed upon

prepetition – to receive payment of a contracted-for fee only if and when the lawyer performs the

postpetition services that create the entitlement to that fee[,]" the Ninth Circuit held that "an

enforceable obligation" only arises once "the attorney actually renders the postpetition legal services

that match up to the debtor's prepetition promise to pay[.]"  *Hines*, 147 F.3d at 1191.

Clark & Washington and Mr. Crawford urge the court to follow the minority view, arguing

that its Engagement Contract created a "straddle obligation," wherein they entered into a pre-petition

---

[11] The basic facts of *Hines* are as follows.  The debtor entered into a written fee agreement with her attorney for payment of a total fee of $875.00 through seven post-dated checks, the first to be cashed pre-petition and the remainder to be cashed post-petition. After changing counsel, the debtor filed a motion for contempt for willful violation of the automatic stay against her former attorney who sent a letter and left a message on the debtor's answering machine after the debtor stopped payment on the uncashed checks.  The bankruptcy court denied the motion for contempt and reduced the attorney fee to the $375.00 already paid, but the bankruptcy appellate panel reversed and remanded for a determination of damages for willful stay violation.  *Hines*, 147 F.3d at 1187-88.

[12] The statute was amended in November 1990, and former paragraph (4), containing this definition, was redesignated as paragraph (5).

obligation to perform post-petition work, and that the Debtors had an obligation to pay when performance was rendered.  To accomplish this, Clark & Washington and Mr. Crawford accepted post-dated checks in each of the Chapter 7 cases in dispute and had each Debtor execute an Acknowledgment that "[t]he initial payment represents fees earned pre-Petition and the future payments are to be applied as contemporaneous compensation for post-Petition services." ENGAGEMENT CONTRACT at 5.  For the following reasons, the court declines to accept the minority view and finds that acceptance of post-dated checks for payment of "flat-fee" or "no-look" attorney's fees is not an acceptable practice and runs afoul of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure.

First, the court respectfully disagrees with the reasoning of *Hines*, wherein that court, in essence, ignored Congress' intention that the scope of claims in bankruptcy cases be broadly interpreted.[13]  The Bankruptcy Code defines "claim" in material part as "[the] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[,]" 11 U.S.C. § 101(5)(A) (2006)[14], and the Supreme Court has held that "Congress intended by this language to adopt the broadest available definition of 'claim,' [and] that 'right to payment' [means] nothing more nor less than an enforceable obligation . . . ." *Johnson v. Home State Bank*, 111 S. Ct. 2150, 2154 (1991) (quoting *Pa. Dep't of Pub. Welfare v. Davenport*, 110 S. Ct. 2126, 2131 (1990)).  "The

---

[13] The United States Bankruptcy Court for the Eastern District of California clarifies the holding in *Hines* as "only that the post-petition payment for services rendered post-petition is permissible even though the parties contract for those services prior to the filing of the petition."  *In re Jastrem*, 224 B.R. 125, 130 (Bankr. E.D. Cal. 1998).

[14] The Bankruptcy Code additionally defines "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[,]" 11 U.S.C. § 101(10)(A) (2006), and "debt" as a "liability on a claim[,]" 11 U.S.C. § 101(12) (2006).

breadth of the definition of 'claim' is critical in effectuating the bankruptcy code's policy of giving the debtor a 'fresh start.'" *Am. Law Ctr. PC v. Stanley (In re Jastrem)*, 253 F.3d 438, 442 (9th Cir. 2001) (quoting *Cal. Dep't of Health Servs. v. Jensen (In re Jensen)*, 995 F.2d 925, 930 (9th Cir. 1993) (citations omitted)). "The fact that a creditor may hold a contingent right to payment until filing the petition does not mean counsel holds a post-petition claim. Holding otherwise undercuts the fresh start provided in section 727(b) and ignore the plain meaning of the statutory definition of claim and debt." *Symes*, 174 B.R. at 118.

Similarly, this court has previously answered the question of when a claim arises pre- or post-petition, holding that "[a] claim is a pre-petition claim within the scope of §101(5)(A) if there was a relationship, existing pre-petition, between the debtor and the creditor such that the creditor could fairly contemplate the possibility of a claim against the debtor's bankruptcy estate at the time that the bankruptcy petition was filed." *In re Cleveland*, 349 B.R. 522, 531 (Bankr. E.D. Tenn. 2006); *accord Griffin*, 313 B.R. at 762-63 ("Under the Bankruptcy Code, a contract-based claim is a pre-petition claim if prior to filing the relationship between the debtors and the creditor contained all the elements necessary to create a right to payment under the relevant contract."); *Riverwood Int'l Corp. v. Olin Corp. (In re Manville Forest Prods. Corp.)*, 225 B.R. 862, 866 (Bankr. S.D.N.Y. 1998) ("Although the definition of claim is broad, the existence of a valid bankruptcy claim depends on (1) whether the claimant possessed a right to payment and, (2) whether that right arose before the filing of the petition.").

In Tennessee, "[i]t is well established that a contract can be express, implied, written, or oral, 'but an enforceable contract must result from a meeting of the minds in mutual assent to terms, must

43

be based upon sufficient consideration, must be free from fraud or undue influence, not against public policy and must be sufficiently definite to be enforced.'" *Thompson v. Hensley*, 136 S.W.3d 925, 929 (Tenn. Ct. App. 2003) (quoting *Klosterman Dev. Corp. v. Outlaw Aircraft Sales, Inc.*, 102 S.W.3d 621, 635 (Tenn. Ct. App. 2002)).  Moreover, contracts are to be construed as of the date they are made and cannot be based upon events occurring subsequent to execution. *Allright Auto Parks, Inc. v. Berry*, 409 S.W.2d 361, 364 (Tenn. 1966).  Clark & Washington and Mr. Crawford do not deny that the Engagement Contracts are legally binding contracts with each of the Debtors, which, under Tennessee law, are construed as enforceable obligations as of the date upon which they were executed.

The court finds that the attorneys' fees in each case are flat fees which arose pre-petition, irrespective of when services were to be rendered.  Upon the signing of each Engagement Contract, Clark & Washington and Mr. Crawford became obligated to each of the Debtors to represent them in their Chapter 7 bankruptcy cases in exchange for payment of the agreed upon flat fee, and the fact that some services were to be provided post-petition does not change the nature of the fee, nor does it change the nature of the obligation.  The majority of these expressly contracted for services – most notably, meetings with the Debtors and the preparation and filing of their respective statements and schedules to commence their cases – were required to be performed pre-petition, while only a few others – primarily attendance at the meeting of creditors and the filing of the Debtors' completion of the financial education course – were required to be performed post-petition, but all of these services fall within the scope of a "Routine Case[] Under 11 U.S.C. Chapter 7."

44

Moreover, each Debtor's obligation to pay the attorneys' fee arose on the respective date of engagement with Clark & Washington and Mr. Crawford. The Engagement Contracts themselves state that "[a]ll fees paid by Client for the purpose of filing this Chapter 7 petition are NON-REFUNDABLE." ENGAGEMENT CONTRACT at 1. If these arrangements were true "saddle obligations" as argued by Clark & Washington and Mr. Crawford, they would not collect post-dated checks pre-petition in anticipation of post-petition services but would, instead, seek payment for post-petition services as rendered post-petition. Instead, their arrangement with each of the foregoing Debtors was unquestionably pre-petition in its entirety, and the language in the Acknowledgment executed by each Debtor stating that "[t]he initial payment represents fees earned pre-Petition and the future payments are to be applied as contemporaneous compensation for post-Petition services[,]" ENGAGEMENT CONTRACT at 5, does nothing to alter the true nature of the payment arrangement, and it is incongruous for Clark & Washington and Mr. Crawford to try and categorize it otherwise.

Likewise, the fact that Clark & Washington and Mr. Crawford expanded the Amended Compensation Disclosures to expressly list certain post-petition actions and services for which they would charge the Debtors additional fees does not alter the true nature of the payment arrangement, nor do the stipulations of the United States Trustee and Clark & Washington and Mr. Crawford in these contested matters that the Amended Compensation Disclosures accurately reflect the Debtors' payment arrangements with Clark & Washington and Mr. Crawford, because the court finds otherwise. As certified by Mr. Crawford in the Amended Compensation Disclosures, Clark & Washington and Mr. Crawford did not receive the pre-petition payment of *any* attorneys' fees from

45

the Waldos, Ms. Mikulen, Mr. Cooley, Ms. Jones, and Mr. Joines, and they received a pre-petition payment of $1.00 from the Johnsons and the Scharffs.  WALDO, JOHNSON, MIKULEN, COOLEY STIP. Ex. B; JONES, JOINES, SCHARFF STIP. Ex. C.  In essence, relying upon the Acknowledgment at the end of each Engagement Contract, Clark & Washington and Mr. Crawford are representing to the court that the Debtors paid nothing or minimal amounts for the pre-petition preparation of their statements and schedules and the filing of their cases, and that the entirety of their fee was earned post-petition in these routine cases, irrespective of the fact that the Amended Compensation Disclosure filed in each case lists adversary proceedings, reaffirmation agreements, redemptions, amendments, judicial lien avoidances, defense of miscellaneous motions and motions for relief from the stay, excess creditors, miscellaneous letters, e-mails and faxes, reopening of cases, and copies as "carve-outs" from the flat fee.[15]

The parties' stipulations notwithstanding, the Amended Compensation Disclosures do not accurately reflect the fee arrangements set forth in the Engagement Contracts each of which was signed by the respective Debtors and Mr. Crawford or another attorney for Clark & Washington. Nothing in the record before the court suggests that any of the Debtors signed a document modifying the terms of their respective Engagement Contract.  There are no corresponding breakout fees listed in the Engagement Contracts whereby the Debtors agreed to pay for anything more than additional

---

[15] In the Eastern District of Tennessee, "[t]he filing of any notice, petition, pleading, motion, brief, application, objection, response, order, or other paper constitutes an appearance by the attorney signing it[,]" and

> [n]otwithstanding any purported limitation of appearance, entry of appearance by debtor's counsel constitutes a general appearance for all contested matters and adversary proceedings pending or thereafter initiated to which the debtor is a party, including actions to determine dischargeability, to deny discharge, or to revoke discharge.

E.D. Tenn. LBR 9010-1.

fees and court costs for any amendments or for representation in adversary proceedings.  *See*
ENGAGEMENT CONTRACT at 1, 4.  The Engagement Contracts ***do not*** carve out representation of the
Debtors in the negotiation of reaffirmation agreements, redemptions, judicial lien avoidances,
motions for relief from the automatic stay, letters, emails, and communications with creditors, nor
should attorneys be allowed to "carve out" these routine services in Chapter 7 bankruptcy cases.  The
court finds these attempted "carve outs" particularly troublesome when Clark & Washington and Mr.
Crawford have charged the Debtors fees ranging from $800.00 to $1,250.00, but now seek to exclude
a majority of the services routinely performed post-petition from that flat fee.   Even more
troublesome is the fact that these carve-outs, with the exception of adversary proceedings, are in
direct conflict with the contractual agreements Mr. Crawford and Clark & Washington entered into
pre-petition with the respective Debtors as set forth in the Engagement Contracts.  In actuality, this
practice raises the question of what sort of post-petition services are being performed and covered
by the flat fee, especially in light of the fact that, in each one of these cases, the Debtors' Chapter 7
Individual Debtor's Statement of Intention, each filed along with the Voluntary Petition and other
statements and schedules, contemplated at least one debt to be reaffirmed by the Debtors.

The court joins with the majority and holds that unpaid portions of a flat fee contracted for
pre-petition constitutes a pre-petition obligation of a debtor which is dischargeable, agreeing with
the following findings of the *Mansfield* court that

> When a client and an attorney agree that the attorney will provide certain services
> (described by a category, a time period, a case, etc.) for a fixed or flat fee, the fee
> covers the services regardless of the amount of time which the attorney spends
> performing the services; both the client and the attorney are obligated to the flat fee
> whether the attorney would have made more or less for the services by charging for
> them by the hour or charging separately for each service.  *See* BLACK'S LAW

DICTIONARY (8th ed. 2004) (defining "fixed fee" as "[a] flat charge for a service; a charge that does not vary with the amount of time or effort required to complete the services."); *In re Fischer*, 2004 Bankr. LEXIS 307, 2004 WL 555407, at *1 (Bankr. C.D. Ill. Mar. 17, 2004) ("With a flat fee, it matters not when the work is performed, since, by definition, a flat fee is a debt that is created upon the execution of the fee agreement and its existence is not linked to the amount or timing of the legal services actually performed."). Consequently, it is inconsistent with the nature of a flat or fixed fee arrangement, regardless of how the fee is paid (e.g., whether the fee is paid in a lump sum, divided into installment payments, etc.) to apportion the fee among the services performed or the time periods within which they were performed. *See Bethea v. Robert J. Adams & Associates*, *supra*, 352 F.3d at 1129 (reasoning that a flat fee retainer agreement cannot be divided by into hourly units without contradicting or re-writing the agreement); *but see In re Nieves*, 246 B.R. 866, 873 (Bankr. E.D. Wis. 2000) (allowing counsel to recover $300 for postpetition work even though counsel agreed to accept a $700 flat fee for his prepetition and postpetition services).

The Court finds the division of a flat fee arrangement into prepetition and postpetition parts to be conceptually inconsistent and therefore untenable. The Court therefore joins those other courts which hold that when a flat or fixed fee prepetition agreement is at issue, the fee must be paid in full prior to the commencement of the debtor's case or the fee is discharged under §727(b).

*Mansfield*, 394 B.R. at 791.

As such, in each of these seven cases, the Debtors' obligations to Clark & Washington and Mr. Crawford for the attorneys' fees incurred by virtue of each respective Engagement Contract were extinguished when the Debtors received a discharge, and because "flat fee" or "no-look" attorney's fees contracted for pre-petition are dischargeable, it is unacceptable for attorneys to ask for and receive post-dated checks from Debtors to be cashed post-petition as payment of those fees. "It is not proper for a bankruptcy attorney to accept postdated checks from a Chapter 7 debtor client[,]" *In re Newkirk*, 297 B.R. 457, 461 (Bankr. W.D.N.C. 2002), and "[t]he use of a method of fee payment has been consistently rejected by bankruptcy courts." *In re Lewis*, 309 B.R. 597, 608 n.31 (Bankr. N.D. Okla. 2004) (collecting cases); *see also In re Shell*, 312 B.R. 431, 436 (Bankr. M.D.

Ala. 2004) (holding that attorneys representing Chapter 7 debtors must be paid pre-petition or the fee is discharged and that attorneys in that jurisdiction who accepted post-dated checks from Chapter 7 debtors risked the imposition of sanctions); *In re Zapanta*, 204 B.R. 762, 763 (Bankr. S.D. Cal. 1997) (holding that the debt represented by post-dated checks from the debtor were dischargeable); *Symes*, 174 B.R. at 119 (holding that pre-petition retention agreements requiring clients to execute post-dated checks to be cashed post-petition are dischargeable and subject to the discharge injunction).

As raised by many of the courts examining the issue of post-dated checks, there are serious ethical implications in such a practice, and the same is true here – that by accepting post-dated checks for dischargeable debts and not advising their clients that the debts were at least potentially dischargeable, Clark & Washington and Mr. Crawford created a conflict of interest with the Debtors under Tennessee's disciplinary rules.  Rule 1.8(a) of the Rules of Professional Conduct states, in material part, as follows:

**Rule 1.8 Conflict of Interest; Prohibited Transactions.**

(a) A lawyer shall not . . . knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

> (1) The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner that can be reasonably understood by the client; and

> (2) The client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

> (3) The client consents thereto in a writing signed by the client.

49

TENN. SUP. CT. R. 8, Rule 1.8(a).  As stated in the official comments to Rule 1.8, "[a]s a general

principle, all transactions between client and lawyer should be fair and reasonable to the client.  In

such transactions, a review by independent counsel on behalf of the client is advisable.  Furthermore,

a lawyer may not exploit information relating to the representation to the client's disadvantage."

OFF. CMTS., TENN. SUP. CT. R. 8, Rule 1.8(a).  Accordingly, "[t]he existence of a conflict of interest

does not require bad motive or intent.  Most often it arises where the attorney's duty to one client

conflicts with his/her duty to another or with the attorney's self-interest."  *In re Martin*, 197 B.R.

120, 128 (Bankr. D. Colo. 1996).

When Clark & Washington and Mr. Crawford required the Debtors to issue post-dated

checks, they required them to transfer an interest – possessory, security, or otherwise pecuniary in

nature – in property of the Debtors to them, *see Lewis*, 309 B.R. at 609, and yet, as the parties

stipulated, Clark & Washington and Mr. Crawford "do not inform their clients that their attorney fee,

to the extent it has not been paid prior to the filing date, will be discharged in the bankruptcy case."

WALDO, JONES, SCHARFF STIPS. at ¶ 13; COOLEY, JOINES STIP. at ¶ 14; JOHNSON, MIKULEN STIP.

at ¶ 15.  Accordingly, even if acceptance of post-dated checks for a dischargeable pre-petition fee

does not create a per se conflict of interest between attorneys and debtors due to the "credit

transaction" between them, *see Newkirk*, 297 B.R. at 460, the practice at least raises the question and

the appearance of such a conflict since the information concerning potential dischargeability of the

fees was not disclosed to the Debtors whereby they could seek additional legal advice, and they did

not consent, in writing, to acceptance of this potential conflict.[16]  As observed by the *Martin* court,

"an accurate advisement of the law would have required disclosure to the Debtor[s] that the issue

[of dischargeability of the fees provided for in the Engagement Contracts] was unresolved in the

[Sixth] Circuit, but had been considered by several courts . . ., the majority of which concluded the

debt was dischargeable."  *Martin*, 197 B.R. at 129.

There is also the question of whether Clark & Washington and Mr. Crawford violated the

automatic stay provisions of 11 U.S.C. § 362(a)(6) and/or the discharge injunction of 11 U.S.C.

§ 524(a) when they, post-petition and in some cases, post-discharge, deposited the Debtors'

post-dated checks for what have been determined to be pre-petition obligations, and when they made

phone calls and/or sent correspondences to the Debtors in efforts to collect upon checks which were

returned for insufficient funds.  The United States Trustee argues that both the automatic stay and

the discharge injunction were violated, urging this court to follow other courts which have examined

the issue and held that the presentment and cashing of post-dated checks for pre-petition attorney's

fees does, in fact, violate the automatic stay.  *See, e.g., Shell*, 312 B.R. at 435 ("Once a debtor files

a petition in bankruptcy, any effort to collect a debt which arose prior to the date of the petition is

stayed by operation of law.  The use of post-dated checks does not, in any way, circumvent the

prohibitions of § 362 of the Bankruptcy Code."); *Newkirk*, 297 B.R. at 461 ("Upon the bankruptcy

filing, the [§] 362 automatic stay went into effect.  This legal injunction restrained creditors,

---

[16] The practice also opens itself up to errors, as evidenced by the fact that Clark & Washington and Mr. Crawford often agree to hold post-dated checks at the request of debtors, *see* WALDO, JOHNSON, MIKULEN, COOLEY, JONES, JOINES, SCHARFF STIPS. at ¶ 11, but on at least two occasions, after agreeing to hold a post-dated check, they unintentionally failed to do so, resulting in fines incurred by the Debtors which were rightfully paid by Clark & Washington and Mr. Crawford.  JOHNSON STIPS. at ¶¶ 12-13; JOHNSON STIP. EX. E; MIKULEN STIPS. at ¶¶ 12-13; MIKULEN STIP. EX. E.

including [the debtor's attorney] from collecting their prepetition debts or acting against [the debtor's] property. . . . Being well aware of [the debtor's] bankruptcy, [his attorney's] negotiation of . . . postpetition checks was a willful violation of the stay[.]"); *McNickle*, 274 B.R. at 478-79 ("[T]o the extent the collection action seeks to recover pre-petition fees, it constitutes a violation of the discharge injunction and the automatic stay."); *Zapanta*, 204 B.R. at 764 (holding that, under California law, the presentment of the debtor's post-dated checks for a dischargeable debt did not fit within any exception to the automatic stay and were violations thereof). On the other side, Clark & Washington and Mr. Crawford argue that neither the automatic stay nor the discharge injunction was violated, first because the checks were paying for post-petition services – an argument that this court has rejected – and because the Bankruptcy Code expressly excepts presentment of checks from the scope of § 362(a).

One of the primary goals of the Bankruptcy Code is to relieve honest but unfortunate debtors of their debts so that they may make a fresh start. *Buckeye Retirement Co., LLC v. Heil (In re Heil)*, 289 B.R. 897, 901 (Bankr. E.D. Tenn. 2003) (quoting *In re Krohn*, 886 F.2d 123, 125 (6th Cir. 1989)). This fresh start is accomplished through discharge, which "does not extinguish the debt itself, but merely releases the debtor from personal liability for the debt." *In re Williams*, 291 B.R. 445, 446 (Bankr. E.D. Tenn. 2003) (quoting *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 53 (5th Cir. 1993)). To enable debtors to achieve this goal, the Bankruptcy Code provides certain protections, chief among them, the automatic stay and the discharge injunction.

At the commencement of a bankruptcy case, the bankruptcy estate, consisting of "all legal and equitable interests of the debtor in property," is created, 11 U.S.C. § 541(a)(1) (2006), and, in

most cases, the protections of the automatic stay go into effect, prohibiting actions against debtors, property of debtors, and property of the estate, including "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]"  11 U.S.C. § 362(a)(6).[17]  The scope of the automatic stay is broad and its protections "automatic and mandatory with the filing of the bankruptcy petition" in order to protect debtors and creditors alike, *Enron Corp. v. Calif. ex rel. Lockyer (In re Enron Corp.)*, 314 B.R. 524, 533 (Bankr. S.D.N.Y. 2004), and it applies to all debts, even those "that will ultimately be excepted from discharge, since one of the fundamental purposes of the automatic stay is to give the Plaintiff 'a breathing spell from his creditors' and 'to be relieved of the financial pressures that drove him into bankruptcy.'" *In re Haas*, 2004 WL 3132027, at *2, 2004 Bankr. LEXIS 2216, at *6  (Bankr. E.D. Va. Dec. 22, 2004) (quoting H.R. REP. NO. 95-595 at 340 (1977)); *In re Printup*, 264 B.R. 169, 173 (Bankr. E.D. Tenn. 2001).  Actions taken in violation of the automatic stay are "invalid and voidable and shall be voided absent limited equitable circumstances," *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir. 1993), and unless otherwise provided for by statute, the automatic stay remains in effect throughout the pendency of the bankruptcy case, terminating with respect to property of the estate once it is no longer property of the estate and with respect to debtors the earlier of the entry of discharge, dismissal, or the closing of the case.  11 U.S.C. § 362(c) (2006).

Once a discharge is granted, the automatic stay terminates and is replaced by the discharge injunction, which "operates as an injunction against the commencement or continuation of an action,

---

[17] In cases involving debtors with multiple filings, the automatic stay, unless extended by order of the court, is limited to thirty days for individual debtors who have had one case pending and dismissed within the previous year, and it does not go into effect for individual debtors who have had two or more cases pending and dismissed within the previous year.  11 U.S.C. § 362(c)(3), (4).  None of the cases before the court are impacted by § 362(c)(3) or (4).

the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]"  11 U.S.C. § 524(a)(2) (2006); *In re Jenkins*, 330 B.R. 625, 628 (Bankr. E.D. Tenn. 2005); *see also In re Perviz*, 302 B.R. 357, 369 (Bankr. N.D. Ohio 2003) (holding that § 524(a)(2) "simply makes permanent what had previously been temporary under § 362(a)(6).").  "The purpose of such an injunction is to protect the debtor from suits to collect debts that have been discharged in bankruptcy." *Perry v. EMC Mortgage Corp. (In re Perry)*, 388 B.R. 330, 335 (Bankr. E.D. Tenn. 2008) (quoting *Hendrix v. Page (In re Hendrix)*, 986 F.2d 195, 199 (7th Cir. 1993)).  Accordingly, once the discharge has been entered by the court, creditors holding pre-petition claims or causes of action against the debtor may not attempt to hold him personally liable, and "the debtor will not be pressured in any way to repay it."  *In re Leonard*, 307 B.R. 611, 613 (Bankr. E.D. Tenn. 2004) (quoting *Stoneking v. Histed (In re Stoneking)*, 222 B.R. 650, 652 (Bankr. M.D. Fla. 1998)); *see also Miles v. Clarke (In re Miles)*, 357 B.R. 446, 450 (Bankr. W.D. Ky. 2006) ("The permanent relief from liability for discharged debts is one of the '[c]ritical features of every bankruptcy proceeding.'") (quoting *Cent. Va. Cmty. College v. Katz,* 126 S. Ct. 990, 996 (2006)).

Although other courts have found the presentment of post-dated checks to violate the automatic stay, authority in the Sixth Circuit has determined otherwise, based upon the Bankruptcy Code's express exception for "the presentment of a negotiable instrument and the giving of notice of and protesting dishonor of such an instrument[,]" 11 U.S.C. §362(b)(11) (2006),[18] thereby

---

[18] In Tennessee, "presentment" is defined as "a demand made by or on behalf of a person entitled to enforce an instrument (i) to pay the instrument made to the drawee or a party obligated to pay the instrument or, in the case of a note or accepted draft payable at a bank, or (ii) to accept a draft made to the drawee." TENN. CODE ANN. § 47-3-501 (2001).  As defined under Tennessee law, a check presented for payment constitutes a negotiable instrument under
(continued...)

"permit[ting] holders of checks drawn by the debtor to deposit them for the purpose of preserving their rights on the instruments despite the filing of a bankruptcy petition[,]" *In re Roete*, 936 F.2d 963, 966 (7th Cir. 1991) (quoting B. Weintraub, BANKRUPTCY LAW MANUAL § 1.09(4) (1986)). Rather than constituting a violation of the automatic stay, "the post-petition honoring of a pre-petition check effects a transfer of property of the estate" which is subject to avoidance as a post-petition transfer. *Buckeye Check Cashing, Inc. v. Meadows (In re Meadows)*, 396 B.R. 485, 492-94 (B.A.P. 6th 2008).[19] Nevertheless, although the presentment of the post-dated checks did not violate the automatic stay, the same cannot be said for other collection activity engaged in by Clark & Washington and Mr. Crawford; the telephone calls and collection letters from Clark & Washington and Mr. Crawford to the Debtors concerning payment of checks returned for insufficient funds were not excepted by § 362(b)(11) or any other subsection, nor was the collection of charges for returned checks, all of which clearly fall within the scope of acts "to collect, assess, or recover a claim against the debtor that arose before the commencement of the case[.]" 11 U.S.C. § 362(a)(6). Furthermore, once the Debtors received their discharge, the discharge injunction of § 524(a), which does not contain an exception for presentment of checks, went into effect, and all actions to collect their pre-petition attorneys' fees by Clark & Washington and Mr. Crawford were in violation thereof,

---

[18](...continued)
Tennessee law and is excepted from the automatic stay. *Franklin v. Kwik Cash of Martin (In re Franklin)*, 254 B.R. 718, 720 (Bankr. W.D. Tenn. 2000).

[19] The United States Trustee argues that, if the basis for Clark & Washington and Mr. Crawford to accept post-dated checks was to get around what other creditors cannot, due to their knowledge of this and other courts in the Sixth Circuit have held concerning the § 362(b)(11) issue, doing so would be considered to have been done not in good faith. The good faith of Clark & Washington and Mr. Crawford is not an issue in these contested matters; however, the court would construe actions by any attorney to use the automatic stay as a sword against debtor clients rather than a shield to protect them as being done as not in good faith.

including not only the letters and telephone calls to collect upon checks returned for insufficient funds, but also for the post-discharge deposit of any of the Debtors' post-dated checks.

With respect to checks returned for insufficient funds, the parties stipulated the following: (1) the Waldos had no checks returned; (2) the Johnsons had one check returned; (3) Ms. Mikulen had one check returned; (4) Mr. Cooley had no checks returned; (5) Ms. Jones had three checks returned; (6) Mr. Joines had one check returned; and (7) the Scharffs had five checks returned. WALDO, JOHNSON, MIKULEN, COOLEY, JONES, JOINES, SCHARFF STIPS. at ¶ 4. The parties also stipulated that if Clark & Washington and Mr. Crawford "receive notification that upon deposit there are not sufficient funds to honor the post-dated check, they generate and send a letter or letters to the debtor(s), and /or make phone calls to the debtor(s) in an effort to notify the debtor(s) of the dishonored check and to collect their fee." WALDO, JONES, SCHARFF STIPS. at ¶ 12; COOLEY, JOINES STIPS. at ¶ 13; JOHNSON, MIKULEN STIPS. at ¶ 14. Additionally, the record reflects that Clark & Washington and Mr. Crawford sent two letters to Ms. Jones, both dated May 20, 2009, concerning a returned check and requesting payment, and that six letters, dated February 5, 2009, March 7, 2009, April 2, 2009, May 5, 2009, May 26, 2009, and July 10, 2009, were sent to the Scharffs. JONES STIP. Ex. B; SCHARFF STIP. Ex. B.[20] Finally, the parties stipulated that Clark & Washington and Mr. Crawford accepted NSF fees totaling $50.00 from the Scharffs. SCHARFF STIPS. at ¶ 2.

Each of the above actions concerning the Johnsons occurred during the pendency of their bankruptcy case and were, thus, violations of the automatic stay. Concerning the Scharffs, the letters

---

[20] The court notes that the overall tone of the letters is polite and not overly demanding; nevertheless, they each either refer to a balance due or ask the debtors to contact them to make payment arrangements.

sent on February 5, 2009, March 7, 2009, April 2, 2009, May 5, 2009, and May 26, 2009, all pre-dated their discharge on July 2, 2009, and were in violation of the automatic stay, as was the collection of $50.00 in NSF fees, whereas the letter sent on July 10, 2009, was in violation of the discharge injunction.

With respect to the post-discharge deposit of the pre-dated checks, the parties have stipulated that Mr. Joines received a discharge on April 15, 2009; however, in his case, Clark & Washington and Mr. Crawford deposited check #1007 in the amount of $250.00 on April 27, 2009, and check #1008, in the amount of $250.00 on May 14, 2009.  JOINES STIPS. at ¶¶ 2, 5.  The deposit of these checks, totaling $500.00, constituted a violation of the discharge injunction against the continuation and/or collection of a pre-petition debt.

"A violation [of the automatic stay] is willful if 'the creditor deliberately carried out the prohibited act with knowledge of the debtor's bankruptcy case.'"  *Printup*, 264 B.R. at 173 (quoting *Walker v. Midland Mortgage Co. (In re Medlin)*, 201 B.R. 188, 194 (Bankr. E.D. Tenn. 1996)).

> A specific intent to violate the stay is not required, or even an awareness by the creditor that her conduct violates the stay. It is sufficient that the creditor knows of the bankruptcy and engages in deliberate conduct that, it so happens, is a violation of the stay. Moreover, where there is actual notice of the bankruptcy it must be presumed that the violation was deliberate or intentional.

> Satisfying these requirements itself creates strict liability. There is nothing more to prove except damages.

*Printup*, 264 B.R. at 173 (quoting *In re Daniels*, 206 B.R. 444, 445 (Bankr. E.D. Mich. 1997)); *see also In re Dunning*, 269 B.R. 357, 362 (Bankr. N.D. Ohio 2001) (a willful violation of the automatic stay does not require a specific intent to violate the stay).   Section 524 does not contain a

corresponding statutory remedy for violations of the discharge injunction, thus the "sole avenue of recourse – and the one for which is the traditional remedy for a violation of a court order – is to bring an action against the creditor for contempt" utilizing 11 U.S.C. § 105(a).[21]  *Perviz*, 302 B.R. at 370; *see also Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422-23 (6th Cir. 2000).  Nevertheless, when determining whether to hold a creditor in contempt for violating the discharge injunction, courts tend to utilize the standard employed when determining whether or not a creditor willfully violated the automatic stay; i.e., whether the creditor deliberately acted with knowledge of the bankruptcy case.  *Kanipe v. First Tenn. Bank (In re Kanipe)*, 293 B.R. 750, 755 (Bankr. E.D. Tenn. 2002).

Clearly, Clark & Washington and Mr. Crawford had knowledge of the Debtors' bankruptcy cases, and their actions in violation of the automatic stay and/or the discharge injunction were willful, notwithstanding their argument that they believed the fees to be post-petition debts.  With respect to violations of the automatic stay, under 11 U.S.C. § 362(k)(1) (2006), if the willful violation resulted in any injury to the Debtors, an award of actual damages, including costs and attorneys fees, is mandated, and in some cases, punitive damages are deemed appropriate.  With respect to violations of the discharge injunction, under § 105(a) and the court's broad and inherent contempt powers, "[t]he modern trend in civil contempt proceedings is for courts to award actual damages for violations of § 524's discharge injunction, and, where necessary to effectuate the

---

[21] Section 105(a) imposes a duty upon the bankruptcy court to uphold the provisions of the Bankruptcy Code by allowing the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a) (2006).

purposes of the discharge injunction, a debtor may be entitled to reasonable attorney fees." *Miles*, 357 B.R. at 450 (citing *Hardy v. United States (In re Hardy)*, 97 F.3d 1384, 1389 (11th Cir. 1996)).

Here, the United States Trustee seeks as sanctions the disgorgement of all fees paid to Clark & Washington and Mr. Crawford associated with their representation of the Debtors and any other sanctions deemed appropriate by the court. In further support of his request for disgorgement, the United States Trustee also takes the position that Clark & Washington and Mr. Crawford should be ordered to disgorge the fees paid in each of these bankruptcy cases under 11 U.S.C. § 329(b), based upon their failure to advise the Debtors that their pre-petition attorneys' fees would be discharged in their bankruptcy, in that the fees exceeded the reasonable value of their services rendered to the Debtors. In opposition, Clark & Washington and Mr. Crawford argue that they did not make that disclosure to clients because they did not believe that the post-dated checks constituted a dischargeable pre-petition debt, and their fees should not be disgorged. Although the court finds it troubling that Clark & Washington and Mr. Crawford would begin such a questionable practice as accepting post-dated checks and would not, out of an abundance of caution and in the spirit of complete candor, advise their clients that their pre-petition attorney's fees were *potentially* dischargeable, because the issue had never been addressed and adjudicated in this court, Clark & Washington and Mr. Crawford cannot be subject to disgorgement on this basis.

The same cannot, however, be said with respect to the original Compensation Disclosures – and to some extent, the Amended Compensation Disclosures – filed by Clark & Washington and Mr. Crawford in each case, which did not, and still do not, accurately reflect the respective terms of employment between Clark & Washington and Mr. Crawford and each of the Debtors as evidenced

59

by the Engagement Contracts.  As stated above, the Bankruptcy Code governs the allowance of attorneys' fees paid to attorneys employed or retained by debtors to represent them in their cases. As is relevant to these contested matters, debtors' transactions with their attorneys are set forth as follows:

> (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

> (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to –

>> (1) the estate, if the property transferred—

>>> (A) would have been property of the estate; or

>>> (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

>> (2) the entity that made such payment.

11 U.S.C. § 329.  Section 329 is further supplemented by Rule 2016(b) of the Federal Rules of Bankruptcy Procedure, which provides, in material part, that "[e]very attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. . . . A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed."

FED. R. BANKR. P. 2016(b).  Furthermore, § 329 and Rule 2016 apply to require not only to initial

disclosures, but any subsequent amendments as well when additional compensation is earned.

> Once a lawyer files a petition in bankruptcy on behalf of a client, his transactions
> with his client are subject to the supervision of the Bankruptcy Court in accordance
> with the provisions of the Bankruptcy Code.  Subsequent amendments to the contract
> between the lawyer and his client or amendments to disclosure statements made
> pursuant to Bankruptcy Rule 2016(b) do not shield the original disclosure or the
> original contract from scrutiny.  Rather, the amended contract or the amended
> disclosure likewise become subject to review, as are the original contract and the
> original disclosure statement.

*Shell*, 312 B.R. at 436.

Section 329 "was enacted because 'payments to a debtor's attorney provide serious potential

for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for

overreaching by the debtor's attorney, and should be subject to careful scrutiny.'"  *In re Campbell*,

259 B.R. 615, 625 (Bankr. N.D. Ohio 2001) (quoting H.R. REP. NO. 95-595, at 329 (1977), *reprinted

in* 1978 U.S.C.C.A.N. 5963, 6285); *see also Jackson*, 401 B.R. at 339.  It, along with Rule 2016(b),

enables courts to carefully scrutinize compensation paid to debtors' attorneys, providing protection

to debtors and creditors and preventing overreaching by attorneys.  *Jensen v. United States Trustee

(In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 848 (B.A.P. 10th Cir. 1997).  Accordingly, the

disclosure of fees under § 329 and the Bankruptcy Rules "is mandatory, not permissive."  *In re

Wood*, 408 B.R. 841, 848 (Bankr. D. Kan. 2009) (citing *Turner v. Davis, Gillenwater & Lynch (In

re Inv. Bankers, Inc.)*, 4 F.3d 1556, 1565 (10th Cir. 1993)).

> To that end, an attorney must "lay bare all [his] dealings" with the debtor concerning
> compensation.  *In re Saturley*, 131 B.R. 509, 517 (Bankr. D. Me. 1991).  The
> disclosures he makes must be "precise and complete."  *In re Berg*, 356 B.R. 378, 381
> (Bankr. E.D. Pa. 2006) (internal quotation omitted).  "Coy or incomplete disclosures"
> that force the court "to ferret out pertinent information" will not do, *Saturley*, 131

61

> B.R. at 517; *see also Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re
> Park-Helena Corp.)*, 63 F.3d 877, 881 (9th Cir. 1995), even if they are merely the
> result of negligence or inadvertence. *Jensen v. United States Trustee (In re Smitty's
> Truck Stop, Inc.)*, 210 B.R. 844, 848-49 (B.A.P. 10th Cir. 1997). Very simply,
> "[a]nything less than the full measure of disclosure" is unacceptable. *Saturley*, 131
> B.R. at 517.

*Jackson*, 401 B.R. at 339-40; *see, e.g.*, *Griffin*, 313 B.R. at 764 (holding that "courts recognize the

duty of voluntary and complete compliance with Rule 2016(b) and § 329(a)" and courts are not

required to "'mine' or otherwise search for any potential violation of the applicable rule.").

"The 'failure to comply with the disclosure rules is a sanctionable violation, even if proper

disclosure would have shown that the attorney had not actually violated any Bankruptcy Code

provision or any Bankruptcy Rules[,]' [and s]anctions may also be imposed for negligent or

inadvertent failures to disclose." *Campbell*, 259 B.R. at 627 (quoting *Neben & Starrett, Inc. v.

Chartwell Fin. Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 880 (9th Cir. 1995)); *see also In re

Kowalski*, 402 B.R. 843, 848 (Bankr. N.D. Ill. 2009) ("Failure to disclose (in this case, fully and

accurately disclose) is sanctionable.") The appropriate sanction for noncompliance is within the

discretion of the court, *Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040,

1045 (9th Cir. 1997); nevertheless, many courts have held that "[f]ailure to meet the disclosure

requirements alone is grounds for disgorgement." *Griffin*, 313 B.R. at 765 ("Defective disclosure

is not a minor matter because a failure to provide the required disclosure alone justifies the

bankruptcy court's denial of any or all fees requested.") (internal citation omitted); *see also Lewis*,

113 F.3d at 1045 (acknowledging that "[t]he Bankruptcy Code contains a number of provisions

designed to protect the debtor from the debtor's attorney," among them § 329, and joining other

courts in holding that "[a]n attorney's failure to obey the disclosure and reporting requirements of

the Bankruptcy Code and Rules gives the bankruptcy court the discretion to order disgorgement of

attorney's fees.").

> Bankruptcy courts, like Article III courts, enjoy inherent power to sanction parties for improper conduct. *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 283-84 (9th Cir. 1996). It follows that the bankruptcy court is vested with the inherent power to sanction attorneys for breaches of fiduciary obligations. *See In re Arlan's Dep't Stores, Inc.*, 615 F.2d 925, 943 (2d Cir. 1979). Accordingly, "a failure of counsel to obey the mandate of § 329 and Rule 2016 concerning disclosure, and by implication review by the Court, is a basis for entry of an order denying compensation and requiring the return of sums already paid." *In re Chapel Gate Apts., Ltd.*, 64 B.R. 569, 575 (Bankr. N.D. Tex. 1986)[.]

*Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 477 (6th Cir. 1996). "Many

courts, perhaps the majority, punish defective disclosure by denying all compensation." *Jackson*,

401 B.R. at 340 (quoting *In re Andreas*, 373 B.R. 864, 872 (Bankr. N.D. Ill. 2007)); *see, e.g.*

*Kowalski*, 402 B.R. at 848 (holding that an appropriate sanction "can include partial or total denial

of compensation, as well as partial or total disgorgement of fees already paid."); *Smitty's Truck Stop*,

210 B.R. at 848 ("[A]n attorney who fails to comply with the disclosure requirements of § 329 and

Rule 2016(b) forfeits any right to receive compensation for services rendered on behalf of the debtor

and may be ordered to return fees already received.").

Specifically addressing fee agreements for installment payments for pre-petition attorney's

fees, through post-dated checks or otherwise, the courts have been quite clear that failure to disclose

that the debt is potentially dischargeable justifies denial of fees. As well-summarized by the *Martin*

court:

> The combination of the Fee Agreement terms and [the attorney's] failure to advise the Debtor leaves the impression that the pre-petition attorney fee debt is not discharged and is collectible during and after the bankruptcy case. This impression obviously benefits [the attorney's] interests and impairs the Debtor's.

63

The conflict and its results are examples of overreaching by Debtor's counsel which § 329 is designed to address. The fact that the debt is dischargeable does not eliminate or protect the Debtor from the conflict of interest. Thus, this case illustrates the difference between the regulatory function of § 329 and the discharge function of § 727.

Because the conflict of interest arose on the filing date, only the post-petition fees are unreasonable and therefore excessive. However, no apportionment between pre-petition and post-petition fees is possible because a flat fee for both was charged and no evidence for separate calculation was presented. The Court cannot speculate as to the portion of the fee incurred either prior or subsequent to the conflict; therefore, [the] entire fee is determined to be excessive and the Fee Agreement is cancelled.

*Martin*, 197 B.R. at 129. Similarly, the *Lewis* court stated that, "[t]o put it simply, post-dated checks are property, and receipt of any and all property by counsel for a debtor in payment of or as security for payment of fees must be disclosed. Anything less is a violation of the spirit and the letter of § 329 and Bankruptcy Rule 2016." *Lewis*, 309 B.R. at 606-07.

In this Memorandum, the court has discussed, in considerable detail, the facts and circumstances of each of the respective cases, and there is no dispute that the original Compensation Disclosures filed by Clark & Washington and Mr. Crawford were false, primarily because they represented that the flat fee had been paid in full in each case, when in fact, the fees had not been paid, and they did not disclose that they had accepted post-dated checks from the respective Debtors. WALDO, JOHNSON, MIKULEN, COOLEY, JONES, SCHARFF STIPS. at ¶ 7; JOINES STIPS. at ¶ 8; WALDO, JOHNSON, MIKULEN, COOLEY, JOINES STIP. EX. C; JONES, SCHARFF STIP. EX. D. Additionally, it was only after the issue was raised by the United States Trustee that Clark & Washington and Mr.

64

Crawford filed the Amended Compensation Disclosures,[22] reflecting that zero or minimal fees had actually been paid by the Debtors pre-petition and that installment payments were to be made on the balance of the agreed upon fees.[23]  For these reasons alone, the court would have cause to deny fees; however, when coupled with the conflict of interest created by the acceptance of the post-dated checks, creating a debtor/creditor relationship with each of the Debtors, the conflict of interest created by the failure of Clark & Washington and Mr. Crawford to advise their clients that the pre-petition Engagement Contracts were at least potentially dischargeable, and the actions of Clark & Washington and Mr. Crawford to collect the subsequently discharged attorneys' fees through letters and phone calls and the charging of additional fees, post-petition and/or post-discharge, the reasons are multiplied, and the court is more than justified in granting the requests of the United States Trustee for sanctions and ordering that Clark & Washington and Mr. Crawford disgorge all fees received from the Debtors in the above referenced cases.

As has been discussed by many of the courts analyzing these issues, attorneys should be compensated for the services they provide.  Nevertheless, that compensation must be paid within the parameters of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, and there are, unquestionably, limitations with respect to payment of attorney's fees in Chapter 7 cases.  The following options, however, which have been employed by other courts, appear to fall within the scope of potential and allowable solutions:  (1) requiring Chapter 7 debtors to pay "flat" or "no-look"

---

[22] Both the original Compensation Disclosures and Amended Compensation Disclosures contain the following Certification signed by Mr. Crawford: "I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding."

[23] The fact that these subsequent payments were via post-dated checks is not, however, disclosed on any of the Amended Compensation Disclosures. Waldo, Johnson, Mikulen, Cooley, Joines Stip. Ex. B; Jones, Scharff Stip. Ex. C.

attorney's fees in full prior to filing; (2) revising retainer agreements and expressly designating pre-petition services, which are paid pre-petition, and post-petition services, which shall be paid post-petition; or (3) accepting payment by third parties. *Chandlier*, 292 B.R. at 588;[24] *see also Mansfield*, 394 B.R. at 793 ("The key to recovery for postpetition services . . . lies in the terms of the attorney's fee agreement. The fee agreement must segregate the fee(s) for prepetition work from the fee(s) for postpetition work. Once again, this distinction is necessary because a fee for prepetition work constitutes a prepetition debt of, or claim against, the estate which is dischargeable, whereas a fee for postpetition work constitutes a postpetition debt of, or claim against, the debtor which is nondischargeable." ); *Symes*, 174 B.R. at 119 ("Consumer debtors' attorneys who wish to represent debtors under 'zero down' cases in Chapter 7 need not despair. The post-petition services they render in defending exemptions and debtors' discharges, assisting debtors at the first meeting of creditors and providing support in dealing with the trustee and aggressive creditors are vital.").

## III

In summary, for the foregoing reasons, the Motions to Require Disgorgement of Fees and to Compel Amendment to FRBC 2016(B) and Schedule F and Notice of Hearing filed on April 6, 2009, in the Waldo, Johnson, Mikulen, Cooley, and Jones cases, the Motion for Sanctions for Violations of 11 U.S.C. § 362(a)(6) and § 524(a)(2) filed May 15, 2009, in the Joines case, and the Motion for Sanctions for Violations of 11 U.S.C. § 362 filed in the Scharff case will be granted. Clark & Washington and Mr. Crawford shall be required to disgorge all attorneys' fees received from the

---

[24] The court notes, additionally, that some courts have allowed debtors to enter into reaffirmation agreements with their attorneys for payment of attorney's fees; however, that practice raises ethical considerations, and the court will not approve such an agreement.

Debtors in the above referenced Chapter 7 bankruptcy cases and directed to return to the Debtors all post-dated checks remaining in their possession.   Additionally, Clark & Washington and Mr. Crawford shall be required to refund to the Scharffs fees totaling $50.00 collected for checks that were returned for insufficient funds.

Orders consistent with this Memorandum will be entered.

FILED: October 27, 2009

BY THE COURT

*/s/  RICHARD STAIR, JR.*

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE